947 F.Supp. 1328 (1996)
MARITZ, INC., Plaintiff,
v.
CYBERGOLD, INC., Defendant.
No. 4:96CV01340 ERW.
United States District Court, E.D. Missouri, Eastern Division.
August 19, 1996.
*1329 Patricia S. Williams, Wayne Mitchell Barsky, Sonnenschein and Nath, St. Louis, MO, for plaintiff.
Richard E. Haferkamp, Anthony G. Simon, Howell and Haferkamp, L.C., St. Louis, MO, Paul R. Williams, Bowling Green, MO, for defendant.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter is before the Court on the motion of defendant to dismiss for lack of personal jurisdiction and improper venue [document # 18], on the motion of defendant to dismiss for failure to state a claim and lack of subject matter jurisdiction [document # 23], and on the motion of defendant to stay the proceedings [document # 24].
Plaintiff Maritz, Inc., has brought this action alleging that defendant Cybergold, Inc., is violating Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in connection with Cybergold's internet activities. Plaintiff seeks a preliminary injunction to enjoin Cybergold's alleged trademark infringement and unfair competition. Plaintiff also seeks an expedited hearing on the preliminary injunction hearing. Because of plaintiff's requests for an expedited hearing on plaintiff's motion for a preliminary injunction, the Court ordered expedited briefing on defendant's motions to dismiss and to stay, in order to resolve threshold jurisdictional questions in this action. See Falkirk Mining Co. v. Japan Steel Works, Ltd. 906 F.2d 369, 372 (8th Cir.1990) (court must determine threshold matter of whether it possesses personal jurisdiction over defendant before it can reach merits of dispute and enter legally binding orders).

I. Personal Jurisdiction and Venue
Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), asserting that this Court cannot exercise personal jurisdiction over it. Defendant argues that plaintiff's first amended complaint fails to allege any facts on which personal jurisdiction over defendant can be based.
Whether the Court can exercise personal jurisdiction over defendant requires a two-part inquiry. The Court first examines whether personal jurisdiction exists under Missouri's long-arm statute.[1] Next, the Court must determine whether the exercise of personal jurisdiction is consistent with due process. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818-19 (8th Cir.1994); CPC-Rexcell, Inc., v. La Corona Foods, Inc., 912 F.2d 241, 243 (8th Cir.1990).
In considering a motion under Rule 12(b)(2), the Court views the facts in a light most favorable to plaintiff, the party opposing the motion. Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977). However, the burden remains on plaintiff to establish that jurisdiction exists. Bell Paper Box, Inc., 22 F.3d at 818; Taylor v. Uniden Corp. of Am., 622 F.Supp. 1011, 1012 (E.D.Mo.1985). Because the Court is ruling on the submissions of the parties, and is not conducting an evidentiary hearing on the matter, plaintiff is required to *1330 make a prima facie showing of personal jurisdiction over the defendant at this time. See Dakota Indus. v. Dakota Sportswear, 946 F.2d 1384, 1387 (8th Cir.1991) (citing CutCo Indus. Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986)).
Viewed in the light most favorable to plaintiff, defendant's contacts with Missouri are as follows. CyberGold maintains an internet site on the World Wide Web. The server for the website is presumably in Berkeley, California. The website is at present continually accessible to every internet-connected computer in Missouri and the world. CyberGold's website can be accessed at "www.cybergold.com" by any internet user.
It is estimated that there are 20 to 30 million users of the internet. Inset Systems, Inc. v. Instruction Set, Inc., 937 F.Supp. 161, 163 (D.Conn.1996). Today, there are around 9,400,000 computers that have present capability to access the internet. American Civil Liberties Union v. Janet Reno, 929 F.Supp. 824, 831 (E.D.Pa.1996). The "internet" is essentially a term that describes the interconnection of all of these computers to each other. It is also referred to as "the information superhighway." The connections of these computers are completed through the use of telephone lines, which electronically transmit information from one computer to another. The internet has created a tremendous global means of rapid exchange of information by the government, academic institutions, and commercial entities. Id. at 830-42 (describing the nature of the internet). There are at least 12,000 persons in Missouri who have internet access, although the number may be much higher. (Pl.Mem. in Opp'n to Def.Mot. to Dismiss at Pl.Ex.A.) Any internet user can access any website, of which there are presumably hundreds of thousands, by entering into the computer the internet address they are seeking. Internet users can also perform searches on the internet to find websites within targeted areas of interest. Via telephone lines, the user is connected to the website, and the user can obtain any information that has been posted at the website for the user. The user can also interact with and send messages to that website. Upon connecting to a website, the information is transmitted electronically to the user's computer and quickly appears on the users screen. This transmitted information can easily be downloaded to a disk or sent to a printer.
CyberGold's website, located at "www.cybergold.com," is operational. The website provides information about CyberGold's new upcoming service. The website explains that the forthcoming service will maintain a mailing list of internet users, presumably including many residents of Missouri. An internet user who wants to be on CyberGold's mailing list provides CyberGold with his or her particular areas of interest. CyberGold will then provide the user with a personal electronic mailbox and will forward to the user advertisements that match the users selected interests.[2] CyberGold plans to provide users incentives for reading the advertisements. CyberGold plans to charge advertisers for access to the internet users on its mailing list. CyberGold's actual service is not yet in operation.
Plaintiff asserts that this website acts as a state-wide advertisement for CyberGold's forthcoming internet service. Plaintiff asserts that the website "invites Missourians to put their names on CyberGold's mailing list and get up-to-date information about the company and its forthcoming Internet service." (Pl. Mem. in Opp'n to Def. Mot. to Dismiss at 4.) Plaintiff also asserts that through this website "CyberGold is also actively soliciting advertising customers" from Missouri. (Id.)
Since CyberGold has set up its website, the website has been accessed through internet users located in Missouri at least 311 times, although 180 of the 311 times were by Maritz and its employees. CyberGold attests that, other than maintaining the website "www.cybergold.com," it has no other contacts with the state of Missouri.
Missouri's long-arm statute allows the exercise of jurisdiction over non-residents to the extent permissible under the due process *1331 clause. See Federal Deposit Ins. Corp. v. Malmo, 939 F.2d 535, 537 (8th Cir.1991); State ex rel. Metal Serv. Ctr. v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc 1984). The Missouri long-arm statute, Mo.Rev.Stat. § 506.500, provides, in relevant part:
Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
(1) The transaction of any business within this state
...
(3) The commission of a tortious act within this state
...
Id.
Plaintiff asserts first that defendant meets the "transaction of any business" within the state test. Plaintiff compares defendant's activities with those of the defendant in Danforth v. Reader's Digest Ass'n, Inc., 527 S.W.2d 355 (Mo. banc 1975). In Danforth, the Missouri supreme court held that the "transaction of any business" requirement was satisfied where defendant conducted promotional activities directed towards recipients located in Missouri. Id. at 358. The defendant in Danforth had mailed into Missouri, on two occasions, thousands of solicitations for magazine subscriptions. Id. at 356-57 n. 2.
Missouri courts have not addressed the issue of whether internet transmissions involving advertising meet the "transaction of any business" test. Plaintiff's comparison of the maintenance of a website to the active solicitation through mass mailings is to some extent unsatisfactory in resolving the question of whether defendant's internet activities amount to the "transaction of any business." As discussed below, there are considerable differences in the two mediums of communication and information exchange. Because the Missouri courts construe the Missouri long-arm statute to confer jurisdiction to the extent allowed by the Due Process Clause, this Court will resolve the long-arm statute question in the context of the due process clause. See State ex rel. Metal Serv. Ctr., 677 S.W.2d at 327.
It is unnecessary to decide whether defendant's activities satisfy the "transaction of any business" test because the Court concludes that defendant is amenable to service under the "commission of a tortious act" provision in Missouri's long-arm statute. Mo.Rev.Stat. § 506.500.1(3). Plaintiff argues that CyberGold is infringing on Maritz's trademark in violation of the Lanham Act, 15 U.S.C. § 1125(a), and that this infringement is causing economic harm and injury to Maritz. Plaintiff asserts that the injury from infringement is occurring in Missouri, as Maritz is located in Missouri.
A violation of the Lanham Act is tortious in nature. See Dakota Indus., 946 F.2d at 1388. In Peabody Holding Co. Inc., v. Costain Group PLC, 808 F.Supp. 1425, 1433-34 (E.D.Mo.1992) (J. Limbaugh), and in May Dep't Stores Co. v. Wilansky, 900 F.Supp. 1154, 1159-60 (Ed.Mo.1995) (J. Shaw), the courts determined that the "commission of a tortious act" provision of Missouri's long-arm statute permitted jurisdiction over a defendant corporation where the sole basis for jurisdiction was an extraterritorial act of tortious interference with a contract which produced an effect in the State of Missouri. Based on these decisions, the Court concludes that Missouri's long-arm statute reaches the defendants, even assuming CyberGold's allegedly infringing activities were wholly outside of Missouri, because the allegedly infringing activities have produced an effect in Missouri as they have allegedly caused Maritz economic injury.
Both Peabody Holding Co. Inc., 808 F.Supp. at 1436-38, and May Dep't Stores Co., 900 F.Supp. at 1161, relied upon by plaintiffs, however, concluded that, while Missouri's long-arm statute extended to the defendants, exercising jurisdiction over the defendant corporations would violate due process. In both cases, the plaintiffs could point to no contacts other than the impact of the defendants' alleged tortious activity upon plaintiffs in the form of economic damages. Peabody Holding Co., 808 F.Supp. at 1437; *1332 May Dep't Stores, 900 F.Supp. at 1161. Such limited contact alone, was "so attenuated that the maintenance of a suit would offend traditional notions of fair play and substantial justice." May Dep't Stores, 900 F.Supp. at 1161 (quoting Peabody Holding Co., 808 F.Supp. at 1437-38).
Thus, the Court must turn to the issue of whether the Court's exercise of personal jurisdiction over defendant CyberGold under the facts of this case would violate due process.[3] Due process requires that there be "minimum contacts" between the nonresident defendant and the forum state before a court can exercise personal jurisdiction over the defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The Eighth Circuit has articulated that
Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when the maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's "reasonable anticipation," there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits of its laws.
Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528-29 (8th Cir.1991) (citations and internal quotation marks omitted). The Eighth Circuit has set forth a five-part test for measuring minimum contacts:
(1) the nature and quality of the contacts with the forum state;
(2) the quantity of those contacts:
(3) the relation of the cause of action to the contacts;
(4) the interest of the forum state in providing a forum for its residents;
(5) the convenience of the parties.
Bell Paper Box, Inc., 22 F.3d at 819 (citing Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983)). The first three factors are the most important. Id.
Whether maintaining a website, such as the one maintained by CyberGold, which can be accessed by any internet user, and which appears to be maintained for the purpose of, and in anticipation of, being accessed and used by any and all internet users, including those residing in Missouri, amounts to promotional activities or active solicitations such as to provide the minimum contacts necessary for exercising personal jurisdiction over a non-resident corporation, presents an issue of first impression to this Court. The internet, a new and rapidly developing means of mass communication and information exchange, raises difficult questions regarding the scope of court's personal jurisdiction in the context of due process jurisprudence.
Because the internet is an entirely new means of information exchange, analogies to cases involving the use of mail and telephone are less than satisfactory in determining whether defendant has "purposefully availed" itself to this forum. Unlike use of the mail, the internet, with its electronic mail, is a tremendously more efficient, quicker, and vast means of reaching a global audience. By simply setting up, and posting information at, a website in the form of an advertisement or solicitation, one has done everything necessary to reach the global internet audience.
A company's establishment of a telephone number, such as an 800 number, is not as efficient, quick, or easy way to reach the global audience that the internet has the capability of reaching. While the internet does operate via telephone communications, and requires users to place a "call" to a website via the user's computer, a telephone number still requires a print media to advertise that telephone number. Such media would likely require the employment of phone books, newspapers, magazines, and television. Even then, an 800 number provides *1333 a less rapid and more limited means of information exchange than a computer with information downloading and printing capabilities. With a website, one need only post information at the website. Any internet user can perform a search for selected terms or words and obtain a list of website addresses that contain such terms or words. The user can then access any of those websites.
In analyzing the first factor articulated by the Eighth Circuit  the Court finds that the nature and quality of contacts provided by the maintenance of a website on the internet are clearly of a different nature and quality than other means of contact with a forum such as the mass mailing of solicitations into a forum, see, e.g., Danforth, 527 S.W.2d at 358, or that of advertising an 800 number in a national publication, see, e.g., Dart Int'l, Inc., v. Interactive Target Sys., Inc., 877 F.Supp. 541, 543-45 (D.Colo.1995); Composite Marine Propellers, Inc., v. VanDer-Woude, 741 F.Supp. 873, 877-78 (D.Kan. 1990).
CyberGold's posting of information about its new, up-coming service through a website seeks to develop a mailing list of internet users, as such users are essential to the success of its service. Clearly, CyberGold has obtained the website for the purpose of, and in anticipation that, internet users, searching the internet for websites, will access CyberGold's website and eventually sign up on CyberGold's mailing list. Although CyberGold characterizes its activity as merely maintaining a "passive website," its intent is to reach all internet users, regardless of geographic location. Defendant's characterization of its activity as passive is not completely accurate. By analogy, if a Missouri resident would mail a letter to CyberGold in California requesting information from CyberGold regarding its service, CyberGold would have the option as to whether to mail information to the Missouri resident and would have to take some active measures to respond to the mail. With CyberGold's website, CyberGold automatically and indiscriminately responds to each and every internet user who accesses its website. Through its website, CyberGold has consciously decided to transmit advertising information to all internet users, knowing that such information will be transmitted globally. Thus, CyberGold's contacts are of such a quality and nature, albeit a very new quality and nature for personal jurisdiction jurisprudence, that they favor the exercise of personal jurisdiction over defendant.
As to the second factor  the quantity of contacts  the Court finds that defendant has transmitted information into Missouri regarding its services approximately 131 times.[4] The information transmitted is clearly intended as a promotion of CyberGold's upcoming service and a solicitation for internet users, CyberGold's potential customers. This factor suggests that defendant is purposefully availing itself to the privilege of conducting activities in Missouri.
As to the third factor articulated by the Eighth Circuit, the litigation in this action against CyberGold results from alleged injuries that, at least in part, arise out of or relate to CyberGold's website and the information posted at the website. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 105 S.Ct. 2174, 2181-83, 85 L.Ed.2d 528 (1985) (discussing requirements for specific jurisdiction). The website invites internet users to use CyberGold's new service when it becomes operational. This service and the promotional efforts that CyberGold is employing by posting the information its website are allegedly infringing on plaintiff's alleged trademark. While CyberGold has not yet set up its service of sending advertisements to internet users on its mailing list, CyberGold's acts of developing a mailing list through its acceptance of addresses on its website are also part of the allegedly infringing activity about which plaintiff complains.
Whether sufficient minimum contacts to obtain personal jurisdiction over a defendant can be established solely through the use of *1334 computers and electronic communications is a new issue under due process jurisprudence. Courts addressing the issue have recognized that such communications via computer are of a different nature. In California Software Inc. v. Reliability Research, Inc., 631 F.Supp. 1356, 1363 (C.D.Cal.1986), the court, in addressing whether a defendant's communication by posting allegedly false statements about plaintiff on an interstate computer network could create personal jurisdiction, stated:
Not only did defendants act intentionally but, by communicating through the [computer] network, they made their messages available to an audience wider than those requesting the information ... Through the use of computers, corporations can now transact business and communicate with individuals in several states simultaneously. Unlike communication by mail or telephone, message sent through computers are available to the recipient and anyone else who may be watching. Thus, while modern technology has made nationwide commercial transactions simpler and more feasible, even for small businesses, it must broaden correspondingly the permissible scope of jurisdiction exercisable by the courts.
Id. Similarly, in Inset Systems, Inc., 937 F.Supp. at 165, the district court found that personal jurisdiction existed over a defendant corporation that made its toll-free 800 number available over the internet to the residents of the forum state. In addressing the issue of "purposeful availment," the Court stated:
[Defendant] has directed its advertising activities via the Internet and its toll-free number toward not only the state of Connecticut, but to all states. The Internet as well as toll-free numbers are designed to communicate with people and their businesses in every state. Advertisement on the Internet can reach as many as 10,000 Internet users within Connecticut alone. Further, once posted on the Internet, unlike television and radio advertising, the advertisement is available continuously to any Internet user. [Defendant] therefore, purposefully availed itself of the privilege of doing business within Connecticut.
Id.; see also CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir.1996) (suggesting that the effect of the internet on commerce, modern transportation, and communication requires a reconsideration of the scope of the personal jurisdictional reach of courts). Similarly, the Court concludes that defendant CyberGold, through its internet activities, has purposefully availed itself of the privilege of doing business with this forum such that it could reasonably anticipate the possibility of being haled into court here.
The Court also concludes that traditional notions of "fair play and substantial justice" do not dictate against exercising personal jurisdiction over defendant in Missouri. See Burger King Corp., 471 U.S at 476-78, 105 S.Ct. at 2184-85. Considerations include the burden on defendant, the interest in the forum state in adjudicating type dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Id. at 477, 105 S.Ct. at 2184-85 (citing World-Wide Volkswagen Corp., 444 U.S. at 292, 100 S.Ct. at 564-65). The State of Missouri has an interest in resolving this case and determining whether a Missouri corporation's trademark is being infringed in violation of a federal statute. Plaintiff likewise has a strong interest in adjudicating this action in Missouri. Defendant, who has availed itself to this forum has not shown that it is so burdened by defending itself in this forum that traditional notions of fair play and substantial justice are implicated.
Defendant's argument that venue is improper must also be denied. Because the Court has concluded it has personal jurisdiction over defendant, venue is proper in this judicial district. See 28 U.S.C. § 1391(c).

II. Subject Matter Jurisdiction
Defendant has moved to dismiss plaintiff's Lanham Act claim for lack of subject matter jurisdiction. Defendant points to allegations in plaintiff's first amended complaint that CyberGold's advertising services are not yet *1335 available or operational. Defendant also states that the complaint does not allege that CyberGold has begun rendering any internet advertising services regarding its new service, or that CyberGold has received any payment from prospective advertisers. Defendant argues that because CyberGold has not yet actually rendered, sold, or transported its goods or services in commerce, plaintiff's Lanham Act claim must be dismissed. Defendant also argues that plaintiff's service, under the name of GoldMail, is not yet operational, but is only in the process of soliciting and enrolling customers to its service. Defendant essentially asserts that plaintiff's Lanham Act claim is premature, as it cannot meet the "use in commerce" test required under the Lanham Act, and that, therefore, it must be dismissed for lack of subject matter jurisdiction.
The Lanham Act provides:
Any person who, in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which 
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a)(1). Defendant argues that because in has not "used in commerce" any of the acts enumerated in the statute, no claim arises under the Lanham Act and thus, the Court is without jurisdiction. Defendant cites to Lang v. Pacific Marine and Supply Co., Ltd., 895 F.2d 761, 765-66 (Fed.Cir. 1990), in which the court held that because defendant's ship, which contained an allegedly infringing name, was still under construction in drydock and would not be ready for nine months, the ship had not entered into commerce and thus, no Lanham Act claim was present. Similarly, in Cognitest Corp. v. The Riverside Publishing Co., 36 U.S.P.Q.2d 1363, 1366, 1995 WL 382984 (N.D.Ill.1995), no Lanham Act claim could be sustained where plaintiff made only conclusory allegations that defendant had presented its infringing program to the public at a meeting, because the plaintiff never alleged that "the defendant's product was never used in commerce." Id.
Although defendant's internet service is not operational yet, plaintiff's Lanham Act claim is not necessarily premature. A Lanham Act claim can exist even before a defendant actually opens the business, so long as the acts of defendant are imminent and impending. See Essie Cosmetics, Ltd. v. Dae Do Int'l, Ltd., 808 F.Supp. 952, 957 (E.D.N.Y.1992) (citing J. Thomas McCarthy, 2 Trademarks and Unfair Competition, § 30.5 at 470 (2d ed. 1984)). In Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd., 662 F.Supp. 203, 205 (S.D.N.Y.1987), the court held that plaintiff's Lanham Act claim was not premature where defendant had printed infringing labels and had shipped one bottle to a potential distributor.
Here, defendant clearly has not actually commenced its service of sending advertisements over the internet to internet users on its mailing list. However, defendant does, as discussed above, maintain a website from which it sends out information regarding its upcoming services. The information is an advertisement of its services and solicits names and addresses of internet users who are potential users on its mailing list. Defendant is using the internet to develop an indispensable part of its advertising service  its mailing list. Thus, because of these activities, the Court concludes that the "uses in commerce" test has been satisfied. See Lobo Enters. v. Tunnel, Inc., 822 F.2d 331, 333 (2d Cir.1987) ("in commerce" requirement satisfied where "service mark has been advertised significantly in travel guides or publications having interstate circulation"); see also Jerome Gilson, 1 Trademark Protection and Practice § 5.11[2] at 5-234 (1996) ("Because Internet communications transmit instantaneously on a worldwide basis, there is little question that the `in commerce' requirement would be met in a typical Internet *1336 message, be it trademark infringement or false advertising"). The Court also concludes that it is imminent and impending that defendant will be fully operating its internet advertising service in the near future. Both developing a mailing list and obtaining advertisers are integral to defendant's business. Plaintiff need not wait until both are fully established before it can maintain an action for violation of the Lanham Act.

III. Defendant's Motion to Stay
CyberGold has moved to stay the proceedings. As grounds for a stay, CyberGold states that, on October 1, 1995, CyberGold filed an intent-to-use trademark application for use of the mark "CYBERGOLD" with the United States Patent and Trademark Office (the PTO) pursuant to 15 U.S.C. § 1051(b) of the Lanham Act and that, on August 5, 1996, CyberGold's pending federal trademark was accepted for registration and approved for publication in the Official Gazette for opposition purposes by the PTO pursuant to 15 U.S.C. § 1062(a).[5] CyberGold asserts that because it filed its intent-to-use application prior to any alleged activities of plaintiff and its use of its GOLDMAIL mark, there is a high likelihood that the opposition to CyberGold's pending federal trademark will be unsuccessful and that CyberGold's CYBERGOLD mark will be approved for registration by the PTO under 15 U.S.C. § 1063.
If CyberGold's mark is eventually registered upon the principal register, CyberGold will be issued a certificate of registration. 15 U.S.C. § 1057(a). Such certificate will "be prima facie evidence of the validity of the registered mark ... and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b). If a registration certificate is issued on the principal register, the person holding the registration certificate for the mark has a nationwide right of priority in using such mark, dating back to the date the person filed its application to register the mark. 15 U.S.C. § 1057(c). Such right of priority exists as to all persons except those who, prior to the date such person filed the application to register, have used the mark or have filed an application to register the mark which is pending or has been registered. Id.
Because of the pending registration of its CYBERGOLD trademark, CyberGold argues that this Court should stay its proceedings and await the outcome of any opposition proceedings regarding its recently published mark. CyberGold argues that the outcome of the PTO proceedings will determine, at least through prima facie evidence, whether CyberGold has priority in the use of its CYBERGOLD mark, and that the outcome of the PTO proceedings will affect whether plaintiff will be able to succeed in its Lanham Act claim against CyberGold.
Under the doctrine of primary jurisdiction, a court can stay a proceeding to allow an administrative agency to first make a determination as to an issue important to the court proceeding. The doctrine "is concerned with promoting the proper relationships between the courts and administrative agencies charged with regulatory duties." U.S. v. Western Pac. R.R. Co., 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The doctrine "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views." Id. at 64, 77 S.Ct. at 165. Several considerations drive the doctrine of primary jurisdiction and whether a court should stay its proceedings and defer to an administrative agency: (1) whether the relevant administrative agency has exclusive primary jurisdiction; (2) whether awaiting the decision of issues by the administrative agency will be of importance in resolving *1337 issues in the litigation before the district court; (3) whether the administrative agency has specialized expertise and experience and the issues in dispute are not within the conventional experience of judges; and (4) whether deferring to an administrative agency is likely to prolong the dispute rather than lead to a judicially economical disposition. See American Bakeries Co. v. Pan-O-Gold Baking Co., 650 F.Supp. 563, 565-68 (D.Minn.1986); The Driving Force, Inc. v. Manpower, Inc., 498 F.Supp. 21, 24-26 (E.D.Pa.1980); see also Southwestern Bell Tel. Co. v. Allnet Communications, Serv., 789 F.Supp. 302, 304-05 (E.D.Mo.1992).
Consideration of these factors leads to the conclusion that this action should not be stayed for initial resolution of issues by the PTO. First, this is an action for under 15 U.S.C. § 1125(a) of the Lanham Act for infringement and unfair competition. The PTO does not have exclusive jurisdiction over such claims and whether to stay this action is discretionary. See American Bakeries Co., 650 F.Supp. at 568. A PTO decision as to whether to issue a registered trademark to CyberGold would not be determinative of any issues in this Court's proceeding. While a PTO decision to issue a registered trademark would be prima facie evidence of CyberGold's right of priority to use the CYBERGOLD mark, it would not be conclusive evidence. Id. at 567 n. 3. While such a determination would be "a material aid in ultimately deciding the issues presented before the court" C-Cure Chem. Co., Inc., v. Secure Adhesives Corp., 571 F.Supp. 808, 823 (W.D.N.Y.1983), it would not be dispositive of plaintiff's infringement and unfair competition claim brought under 15 U.S.C. § 1125(a).
While the PTO clearly has specialized expertise and experience in the area of registration of trademarks, the ultimate issue which this Court must decide is whether a violation of 15 U.S.C. § 1125(a) has occurred. The PTO cannot resolve such issues. Rather, the district courts are vested with jurisdiction to hear such claims and the issues involved in such claims are within "the conventional competence of courts." Nader v. Allegheny Airlines Inc., 426 U.S. 290, 305-06, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976).
Finally, considerations of judicial economy suggest that stay is inappropriate at the present time. While plaintiff has indicated that it expects to file opposition to CyberGold's pending registration in the PTO, such proceedings have not yet commenced, as CyberGold's pending federal trademark was only recently accepted for registration and approved for publication in the Official Gazette for opposition purposes. Also, because it appears that CyberGold is amending its application for its federal trademark, it appears likely that a considerable amount of time may pass before any determination is made by the PTO whether to issue a trademark registration to CyberGold. Thus, a stay to allow the PTO to make its determinations would cause considerable delay in these proceedings, yet would not resolve the pending dispute between the parties. See Goya Foods, Inc., v. Tropicana Prods., Inc., 846 F.2d 848, 851-54 (2d Cir.1988). The Court will deny defendant's motion to stay.
Accordingly,
IT IS HEREBY ORDERED that the motion of defendant to dismiss for lack of personal jurisdiction and improper venue [document # 18] is DENIED.
IT IS FURTHER ORDERED that the motion of defendant to dismiss for failure to state a claim and lack of subject matter jurisdiction [document # 23] is DENIED.
IT IS FURTHER ORDERED that the motion of defendant to stay the proceedings [document # 24] is DENIED.
NOTES
[1] Under Federal Rule of Civil Procedure 4(e)(1) and (h), "[u]nless otherwise provided by federal law," service of process may be effected upon defendant "pursuant to the law of the state in which the district court is located." As the Lanham Act does not contain any provisions providing for service of process, the Court looks to the Missouri statutes providing for service of process. See 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1075 at 480-81 (2d ed.1987).
[2] CyberGold's website does not suggest that its service will not be available to anyone who wants to subscribe to the service. Rather, the service appears to be available to any internet user.
[3] Even though plaintiff's claims are brought under a federal statute and on non-diversity grounds, the Court employs the minimum contacts analysis under the due process clause, albeit under the fifth amendment instead of the fourteenth amendment. See Dakota Indus., 946 F.2d at 1389 n. 2.
[4] The Court does not consider, for purposes of establishing personal jurisdiction, the 180 times that plaintiff accessed defendant's website. If such contacts were to be considered, a plaintiff could always try to create personal jurisdiction. Further, in the context of this case, plaintiff could not argue that it is in any way being damaged by CyberGold's sending of an advertisement or solicitation of its allegedly infringing service to Maritz.
[5] CyberGold has apparently filed an amendment to its application for registration of its CYBERGOLD mark. (See Def. Mem. in Support of Mot. to Stay Ex. A.) Upon the filing of an amendment to an application for registration, the application for registration of the mark is subject to a reexamination and possible republication in the Official Gazette for opposition purposes. See 15 U.S.C. § 1062(a)-(b).