**CARROT BUNCH CO., INC. d/b/a Carrot Ink Cartridges and Carrot Ink, Plaintiff,**

v.

**COMPUTER FRIENDS, INC. d/b/a Printer Ink Cartridges, Inc., Carrots Inks, Inc. d/b/a Carrot Inks and Carrot Ink Jet Cartridges and Jimmie Moglia, Defendants.**

No. 3:01–CV–1229–R.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 14, 2002.

---

Kanawha County, attached to Plaintiffs' Joint Reply in Support of their Motions for Remand.

David H. Harper, Haynes & Boone, Dallas, TX, for Plaintiff.

John Morant Cone, Akin, Gump, Strauss, Hauer & Feld, Dallas, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

BUCHMEYER, District Judge.

Carrot Bunch Companies filed suit against Computer Friends, Carrots Inks and Jimmie Moglia for violations of the Anticybersquatting Consumer Protection Act codified in 15 U.S.C. § 1125(d) ("ACPA"), the Lanham Act codified in 15 U.S.C. § 1117(a), unfair competition, misappropriation, and the Texas tort of Injury to Business Reputation or Trade Name or Mark as codified in the Texas Business and Commercial Code § 16.29.

Now before the court is Defendants' Motion to Dismiss and/or Transfer Venue (filed August 17, 2001). Defendants Carrots Inks and Moglia have moved to dismiss the claims against them by arguing the absence of personal jurisdiction. Defendant Computer Friends consented to jurisdiction. *See* Pl.'s Br. in Supp. of Resp. at 2. Alternatively, all Defendants

have moved to transfer this case to the United States District Court for the District of Oregon. Defendants' Motion to Dismiss and/or Transfer Venue is DENIED in full for the reasons herein stated.

## I. FACTUAL BACKGROUND

Plaintiff Carrot Ink is a Texas corporation with its principal place of business in Carrollton, Texas. Since 1998, Plaintiff operates a website,[1] which markets and sells inkjet printer cartridges and refill kits. Carrot Ink has also used and extensively promoted its "Carrot Ink" and "Carrot's Ink Cartridges" trademarks in connection with its website.

Defendant Moglia, an Oregon resident, is the founder and owner of both Computer Friends and Carrots Inks. Defendant Computer Friends is an Oregon corporation, organized in 1985, that sells and distributes printer inkjet cartridges, inkjet refill kits, and other computer equipment over the Internet. Defendant Carrots Inks is an Oregon business, incorporated by Moglia in March 2001 to sell printer inkjet cartridges and inkjet refill kits over the Internet.

In the fall of 2000, Moglia used the aliases of "John Gailsworth" and "Curtis Peterson" to register many possible variations of Carrot Ink's trademarks "Carrot Ink" and "Carrot's Ink Cartridges" as domain names.[2] The Moglia registered domain names are: "carrotsink.com," "carrotinks.com," "carrotsinks.com," and "carrotinkcartridges.com" (collectively, the "domain names"). Plaintiff's counsel sent Moglia a cease and desist letter through certified mail on February 26, 2001, which included information regarding Plaintiff's existence and rights in the trademarks "Carrot Ink" and "Carrot's Ink Cartridges." Within a week of receiving the cease and desist letter, Moglia registered "Carrots Inks, Inc." as a business entity with the Oregon Secretary of State. Plaintiff's counsel mailed Moglia a second cease and desist letter on April 9, 2001. Moglia declined to take any action to remedy the alleged infringement and instead created a "Carrots Inks, Inc." website to sell printer inkjet cartridges in competition with Carrot Ink.

## II. ANALYSIS

### A. PERSONAL JURISDICTION STANDARD

A Federal court sitting in diversity may exercise personal jurisdiction only to the extent that it is permitted by the state long arm statute if exercising jurisdiction does not violate due process guaranteed by the Fourteenth Amendment. *See Allred v. Moore & Peterson,* 117 F.3d 278, 281 (5th Cir.1997) (citations omitted). The plaintiff has the burden of establishing the court's power to exercise personal jurisdiction over a defendant. *See Bullion v. Gillespie,* 895 F.2d 213, 216–17 (5th Cir. 1990). "Where the district court rules on a motion to dismiss for lack of jurisdiction

---

1. http://www.carrotink.com.

2. Moglia claims never to have heard of Carrot Ink prior to his registration of the domain names or his registration of the entity "Carrots Inks, Inc." with the Oregon Secretary of State. However, a user from Computer Friends' website server accessed Carrot Ink's website on numerous occasions at least three months prior to Moglia's registration of the domain names in October 2000. *See* J.A. at 9–10. Carrot Ink's website server registered around forty visits from the Computer Friends' Internet protocol (I.P.) identifier number before Jimmie Moglia's deposition on November 9, 2001. *See id.* Moglia contends that it is completely coincidental that he: (1) decided to name his new entity after a "carrot;" (2) registered the variations of Carrot Ink's domain name and trademark; (3) registered "Carrots Inks, Inc." in Oregon three days after Carrot Ink sent its first "cease and desist" letter; and (4) was in the same business as Carrot Ink of selling printer ink jet cartridges and refills over the Internet.

without conducting an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case of jurisdiction." *Felch v. Transportes Lar–Mex SA De CV,* 92 F.3d 320, 326 (5th Cir.1996).

■ Under the Texas long arm statute, a nonresident may be subject to personal jurisdiction if the nonresident commits "acts constituting doing business" in Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 2000). The Texas Supreme Court's "doing business as" requirement is interpreted broadly, such that its reach spans as far as the U.S. Constitution permits. *See Gundle Lining Const. v. Adams County Asphalt,* 85 F.3d 201, 204 (5th Cir.1996) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990)). Thus, this Court needs only to consider whether an exercise of jurisdiction over Defendants Moglia and Carrot Inks satisfies Constitutional due process requirements. *See Stuart v. Spademan,* 772 F.2d 1185, 1189 (5th Cir.1985).

■ Exercising personal jurisdiction over a nonresident defendant will not violate due process if two conditions are met. *See Gundle,* 85 F.3d at 204. First, the defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum contacts with the forum state must be significant enough so that the nonresident defendant should reasonably anticipate being sued in the forum state. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 296, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Second, exercising jurisdiction over the nonresident defendant must not offend traditional notions of fair play and substantial justice. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

■ Minimum contacts analysis may be further subdivided into two categories of contacts-those that give rise to specific jurisdiction and those that give rise to general jurisdiction. *See Gundle,* 85 F.3d at 205. Specific jurisdiction, which is the alleged basis for jurisdiction in this case, permits the exercise of personal jurisdiction over a nonresident defendant only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To determine whether or not specific jurisdiction may be exercised, "the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Gundle,* 85 F.3d at 205 (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

### B. PERSONAL JURISDICTION IN INTERNET CASES

■ There is a clear Fifth Circuit standard for assessing personal jurisdiction in Internet cases. In *Mink v. AAAA Development LLC,* the Fifth Circuit adopted the "sliding scale" test first set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* to evaluate the effects of a defendant's Internet activities. *See Mink,* 190 F.3d 333, 336 (5th Cir.1999)(citing *Zippo Mfg. Co.* 952 F.Supp. 1119 (W.D.Pa.1997)). Although *Mink* was a general jurisdiction case,[3] Tex-

---

**3.** A state asserts general jurisdiction over a defendant when it exercises personal jurisdiction over a defendant in a suit not arising out of, or related to, the defendant's contacts with the forum state. *See Calder v. Jones,* 465 U.S. 783, 787, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

as district courts have interpreted *Mink's* adoption of *Zippo* to apply in both general jurisdiction and specific jurisdiction cases. *See, e.g., American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.,* 106 F.Supp.2d 895, n. 10 (N.D.Tex.2000). Hence, this Court applies the *Zippo* analysis to determine whether Defendants' Internet activities satisfies the minimum contacts jurisdictional requirement.

 *Zippo* requires a court to look to the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co.,* 952 F.Supp. at 1124. The level of activity conducted may be classified into three categories. The first category consists of situations where a defendant does business over the Internet by entering into contracts with residents of other states by knowingly and repeatedly transmitting computer files over the Internet. *See id.* Jurisdiction is proper in this type of case. *See id.*

 The second *Zippo* category consists of situations where a defendant has a website that allows a user to exchange information with a host computer. *See id.* Jurisdiction is determined in these types of cases by looking at "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo Mfg. Co.,* 952 F.Supp. at 1124 (citing *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996)). The more interactive and commercial the website is, the more likely it is that a court will find that the minimum contacts requirement is met. *See, e.g., Revell v. Lidov,* 2001 WL 285253, *3–*4, 2001 U.S. Dist. LEXIS 3133, *11 (N.D.Tex.2001).

 The third *Zippo* category consists of situations where a defendant has merely posted information on an Internet website which is accessible to out of state users. *See Zippo Mfg. Co.,* 952 F.Supp. at 1124. Jurisdiction is not proper in this type of case because the nature of the contact is informational and does not necessitate an interaction between the website and the user. *See id.* (citing *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y. 1996)).

## C. DEFENDANTS' INTERNET ACTIVITY

Both Carrots Inks and Jimmie Moglia are subject to personal jurisdiction. Their actions purposefully availed them of the privilege of conducting business in Texas, thereby invoking the benefits and protections of Texas law. Carrots Inks and Moglia should have had every reasonable expectation of being sued in Texas.

### 1. DEFENDANT CARROTS INKS

Two cases illustrate the difference between Internet activity that is sufficient to confer jurisdiction under *Zippo's* second category and that which is not. In *American Eyewear, Inc.,* the defendant used its website to knowingly enter into contracts with Texas residents for commercial gain. *See American Eyewear Inc.,* 106 F.Supp.2d at 901. Customers interacted with the website by submitting product order forms, and also by using the website's e-mail option to submit requests to the defendant's customer service department. *See id.* The defendant shipped goods that were ordered through its website to Texas. *See id.* This Court classified the defendant's activities as falling within *Zippo's* second category because the defendant's activity was a regular transaction of business with Texas residents. *See id.* at 902. Therefore, the defendant had purposefully availed itself of the benefits of the state of Texas and jurisdiction was appropriate. *See id.*

On similar facts, this Court did not find that personal jurisdiction was appropriate in *People Solutions, Inc. v. People Solutions, Inc.,* 2000 WL 1030619, 2000 U.S. Dist. LEXIS 10444 (N.D.Tex. July 25,

2000). In *People Solutions*, the plaintiff sued for trademark infringement based on the use of the "People Solutions" trademark on its website. *See People Solutions*, 2000 WL 1030619, at \*1, 2000 U.S. Dist. LEXIS, at \*1. The defendant's website provided detailed descriptions and interactive pages regarding the products and services that it offered. *See id.* Customers could test the defendant's products, download product brochures and information, and order products online. *See id.* Thus, this level of interaction fell into the second category of the *Zippo* scale. *See id.* at \*1. In *People Solutions*, however, this Court found no personal jurisdiction because there was no evidence that the defendant actually sold any products to, or contracted with, anyone in Texas. *See id.*

Carrots Inks' website operates similarly to the interactive website discussed in *American Eyewear*, where this Court found jurisdiction to be appropriate. In *American Eyewear*, this Court noted the following characteristics of the defendant's website: (1) anyone with Internet access could connect to the website and make purchases; (2) customers could browse interactively in search for particular products; (3) customers could purchase defendant's products by completing order forms with shipping address and credit card information; (4) the form is electronically submitted over the Internet, and the product is packaged and shipped to the customer; (5) an e-mail message confirming the purchase was sent to the customer. *See American Eyewear, Inc.*, 106 F.Supp.2d at 898.

**[13]** This case against Carrot Inks fits in the second category of the *Zippo* analysis. Plaintiff's cause of action arises directly from Carrots Inks' contacts with Texas residents through its interactive website. Moglia's admits in his deposition testimony that through its website, Carrots Inks sold products to Texas consum-

ers. *See* J.A. at 155 (Moglia's November 9, 2001 Deposition). As well, Carrots Inks' website sends an e-mail confirmation of purchase to those customers who provide their e-mail addresses. This direct contact results in an exchange of information between the website and the consumers who order the inkjet printer cartridges. This case involves the specific type of contact between the defendants and the forum state that this Court found wanting in *People Solutions*. *See People Solutions*, 2000 WL 1030619, at \*1, 2000 U.S. Dist. LEXIS, at \*4. Therefore, this Court has specific jurisdiction over Carrots Inks due to its operation of an interactive Internet website that is used to sell printer inkjet products to Texas residents.

**2. DEFENDANT JIMMIE MOGLIA**

The exercise of personal jurisdiction over an individual for his Internet activities, including allegations of trademark infringement and cybersquatting, is proper when a defendant intentionally directs his tortious activities toward the forum state. *See Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc., et al.*, 2001 WL 290569, \*2, 2001 U.S. Dist. LEXIS 3724, \*9 (N.D.Tex.2001) (analyzing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998)). When an individual defendant has expressly and intentionally aimed his conduct at Texas, with the effect of injuring a plaintiff with its principal place of business in this state, the defendant is subject to jurisdiction here. *See id.* at \*2. This Court has specific jurisdiction over Moglia because he intentionally directed his tortious activities toward the forum state by registering, using and maintaining the domain names "carrotinks.com," "carrotsinks.com," "carrotsink.com" and "carrotinkcartridges.com" with the knowledge that his actions would likely injure Carrot Ink in Texas.

### D. TRANSFER OF VENUE

 Defendant requests transfer to federal district court in Oregon. This transfer is unwarranted. In the Fifth Circuit, a plaintiff is generally entitled to choose the forum. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989). For this reason, courts "should not transfer venue where the result will be merely to shift the expense and inconvenience from one party to the other." *Ensearch Int'l Exploration, Inc. v. Attock Oil Co.*, 656 F.Supp. 1162, 1167 n. 15 (N.D.Tex. 1987).

Transferring venue to Oregon will simply shift the inconvenience of litigating outside of one's home state from Defendants to Plaintiff. Under such circumstances, Plaintiff's choice of forum trumps. The importance of Plaintiff's selection of forum is increased in this case because its principal place of business is in the Northern District of Texas. *See, e.g., Nat'l Group Underwriters, Inc. v. Southern Sec. Life Ins. Co.*, 2001 WL 1478800, *2, 2001 U.S. Dist. LEXIS 18969, *5 (N.D.Tex. 2001) (citing *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1396 (S.D.Tex.1992)).

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and/or Transfer Venue is DENIED in full.

It is so **ORDERED.**