**E–DATA CORPORATION, Plaintiff,**

v.

**MICROPATENT CORP., et al., Defendants.**

**Civil No. 3:96CV523(JBA).**

United States District Court, D. Connecticut.

Sept. 30, 1997.

---

David Fink, Stamford, CT, for Plaintiff.

Barry Kramer, Cummings & Lockwood, Stamford, CT, Gene S. Winter, Wesley W. Whitmyer, Jr., St. Onge, Steward, Johnston & Reens, Stamford, CT, Jonathan T. Rubens, Niesar & Diamond, San Francisco, CA, Timothy A. Czaja, Thomas J. Stueber, Kinney & Lange, Minneapolis, MN, for Defendants.

### RULING ON DEFENDANT WEST STOCK INC.'S MOTION TO DISMISS [DOC. 80]

ARTERTON, District Judge.

This is a patent infringement action in which plaintiff E–Data Corporation ("E–Data") claims that defendants, including West Stock Inc. ("West Stock"), have infringed on United States Patent No. 4,528,643, the rights to which are assigned to plaintiff. The patented invention is a system for reproducing information embodied in material objects, such as recordings, video games, motion pictures, books, sheet music, greeting cards and the like, at point of sale locations with the permission of the owner of the information. (U.S. Patent No. 4,528,643 attached to Complaint). Specifically, plaintiff claims that defendant West Stock infringes the patent when it offers consumers the opportunity to

purchase photography images via the Internet by paying a licensing fee to unlock and instantly download photography images on the consumer's computer. West Stock moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), contending that the court lacks personal jurisdiction over it in Connecticut. On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over defendant. *Metropolitan Life Insurance Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). Before discovery, plaintiff may defeat such a motion to dismiss based on legally sufficient allegations of jurisdiction. *Id.* Where the parties have conducted jurisdictional discovery but no evidentiary hearing has been held, plaintiff must allege facts that "if credited would suffice to establish jurisdiction over the defendant." *Id.*[1]

### FACTUAL BACKGROUND

Plaintiff is a Utah corporation with a business office in Connecticut. West Stock, a Washington corporation with its principal place of business in Seattle, Washington, licenses stock photography to commercial users. It has no offices in Connecticut, it owns no property and maintains no financial accounts in this forum, nor does it have any employees or other agents here. It has never been authorized to conduct business in Connecticut. (Groman Aff. ¶ 2). Since December 1995, West Stock has operated "Muse" an Internet based stock photography service through which purchasers may electronically select a photograph, license its use, pay for that use, and download the image—all via the Internet. (Groman Aff. ¶ 3). West Stock's Internet server is in the state of Washington, its Internet service provider is a Washington corporation located in Seattle, Muse's images are stored and transmitted from the server in Washington, and payment for purchased photos is received from customers by credit card through "Netscape's Commerce Server" at U.S. Bank in

Seattle, Washington. (Groman Aff. ¶ 3). None of the photographers whose photographs are available for customer viewing are in Connecticut. West Stock represents that its customers are anonymous without any geographic connection, that West Stock does not receive the names or addresses of its customers, that its licensing agreement provides for application of Washington law, and that its only connection with a customer is a credit card transaction number—the credit card numbers themselves are not preserved. (Groman Aff. ¶ 3). Defendant claims no known connection to Connecticut.

### DISCUSSION

In resolving questions of personal jurisdiction in a diversity case, a district court must conduct a two part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws, and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process. *Id.* (citing *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990)). Although plaintiff's basis for personal jurisdiction over West Stock is not clear in its Complaint, in its papers plaintiff relies on Conn. Gen. Stats. § 33–411(c)(2) and (4). Section 33–411(c) provides that a foreign corporation is subject to suit in Connecticut, whether or not it transacts business in the state, on any cause of action arising out of any business solicited in this State by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state (§ 33–411(c)(2)); or out of tortious conduct in Connecticut, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance (§ 33–411(c)(4)).

The Connecticut Supreme Court recently construed the provision in the long-arm statute conferring jurisdiction over a cause of

---

**1.** The court afforded plaintiff the opportunity to undertake discovery related to personal jurisdiction in this case. Plaintiff, however, declined the opportunity for such discovery, representing that it would instead rely on defendant's Internet activities to establish personal jurisdiction over defendant in Connecticut. Accordingly, the Court will decide defendant's Motion to Dismiss under the post-discovery standard.

action arising out of any business solicited in this State, if the corporation has repeatedly so solicited business. In *Thomason v. Chemical Bank*, 234 Conn. 281, 661 A.2d 595 (1995), the court held that a causal connection between the defendant's forum related activities and the plaintiff's lawsuit is not required and a plaintiff need only show that the defendant could reasonably have anticipated being haled into court here by some person who had been solicited in Connecticut in a manner which is not materially different from plaintiff's solicitation. *Id.* at 290, 661 A.2d 595.

In *Thomason*, plaintiffs' breach of fiduciary duty suit against the out-of-state bank arose out of the business repeatedly solicited in Connecticut by that bank (although not solicited from plaintiffs themselves) by means of numerous print advertisements in newspapers and magazines with substantial Connecticut circulations, which specifically encouraged Connecticut residents to place a wide variety of banking business with the trustee bank. *Id.* at 298, 661 A.2d 595. In addition, the bank performed a number of mortgage transactions in Connecticut and had a large credit card business in the state. *Id.* In view of the bank's activities, the court concluded that the statutory requirement of § 33–411(c)(2) that the cause of action arise out of business repeatedly solicited in Connecticut was satisfied.

In order to meet its burden of alleging facts that if credited would suffice to establish jurisdiction over the defendant, plaintiff submits that West Stock actively, continuously and repeatedly advertises, markets, promotes, offers to sell, sells and distributes photography images on the Internet, (Muse Web Site, Pl.'s Ex. A), and that there are at least 10,000 Internet access sites in Connecticut. Plaintiff cites *Inset Systems,*

*Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161, 164 (D.Conn.1996) in support of its position that the existence of West Stock's Web site is sufficient to establish personal jurisdiction over it in Connecticut. In *Inset Systems,* plaintiff claimed that defendant infringed plaintiff's trademarked name by using it in its Internet domain address and "1–800" number to advertise its goods and services. *Id.* at 163. The *Inset Systems* court concluded that these activities satisfied § 33–411(c)(2). Unlike in *Inset Systems* where Connecticut Web users could view defendant's solicitations using plaintiff's trademarked name by typing defendant's Web address, or even merely by viewing defendant's allegedly infringing domain name on a Web browser directory, in this case, a Connecticut user must play a more active role in order to view any solicitation by West Stock. Specifically, the Connecticut user must find defendant's Web address, access it, view and browse the information and photographs available at the site. Thus, the activity necessary for a Connecticut consumer to be solicited by West Stock on the Internet is distinguished from the more passive type of Web solicitation in *Inset Systems.*[2]

Plaintiff's contention, that because West Stock does not retain the addresses of its customers West Stock has no basis to deny that it advertises and offers to sell its images to Connecticut residents on the Internet, is unpersuasive because it is plaintiff's burden to allege facts demonstrating that West Stock solicits business in this forum which it could have attempted, for example, by discovery obtained from the U.S. Bank in Seattle regarding whether any of the credit card users it has registered as doing business on the Muse site were located in Connecticut. Rather, plaintiff merely relies on the national and international character of the Internet to

---

2. In addition, this case presents a different factual situation from those cases relied upon in *Inset Systems.* *See McFaddin v. National Executive Search, Inc.,* 354 F.Supp. 1166, 1169 (D.Conn. 1973) (six advertisements over a six month period in a newspaper whose circulation "clearly include[d] Connecticut" constituted a sufficiently repetitious pattern under § 33–411(c)(2)); *Whelen Engineering Co., Inc. v. Tomar Electronics,* 672 F.Supp. 659, 661–62 (D.Conn.1987) (advertisements in 30 publications known to have been circulated in Connecticut, delivery of 30 infringing catalogs to Connecticut residents, and two sales of allegedly infringing products to Connecticut residents satisfied § 33–411(c)(2)). Unlike *McFaddin* and *Whelen,* plaintiff has made no factual showing, despite the opportunity for jurisdictional discovery, that any of West Stock's Internet advertising actually reached Connecticut, i.e., that any Connecticut resident ever accessed West Stock's Web site to view or use it.

demonstrate that West Stock's Internet advertising had the potential to reach and solicit Connecticut residents. If such potentialities alone were sufficient to confer personal jurisdiction over a foreign defendant, any foreign corporation with the potential to reach or do business with Connecticut consumers by telephone, television or mail would be subject to suit in Connecticut. Indeed, this view of personal jurisdiction is inconsistent with the reasoning of *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 295–96, 100 S.Ct. 559, 566–67, 62 L.Ed.2d 490 (1980) in which the Supreme Court held that the concept of "foreseeability" alone has never been a sufficient Constitutional benchmark for personal jurisdiction.

There are hundreds of thousands of Web sites on the Internet, *see Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328, 1330 (E.D.Mo.1996), and 10,000 Internet users in Connecticut. In the absence of plaintiff's allegation of facts showing that West Stock's Web advertisements actually reached this forum through any Connecticut consumer locating West Stock's Web address and using that address to visit its Web site, the Court concludes that plaintiff's mere presumption that one of these 10,000 users must have visited the Muse Web site and viewed these solicitations is insufficient to meet plaintiff's burden under § 33–411(c)(2).

■ In its papers, plaintiff also contends that Muse's Web site represents that its marketing operations include distribution of its catalog in over 30 countries, marketing its service via 27 international partners, marketing its service on the Muse Web site itself, and conducting research requests from thousands of clients. Further, plaintiff maintains that Muse's Web site contains an e-mail address which enables users to contact West Stock, which in the case of Connecticut users, plaintiff posits, occurs by utilizing a local Connecticut·telephone number through Internet service providers such as America Online, CompuServe and Prodigy, although plaintiff provides no facts supporting this assertion. Plaintiff also notes that Muse's Web site contains West Stock's name, address, telephone and fax numbers in order to encourage photographers from all states to become West Stock clients, and that an Internet article about Muse includes a "1–800" number to obtain further information on that service (Pl.'s Ex. B). The court concludes, however, that West Stock's "national" and "international" advertising, unlike that in *Thomason*, have not been demonstrated to be purposefully directed at Connecticut residents. Its distribution of catalogs in 30 countries, relationship with 27 international partners, research requests from unnamed clients with no geographical location, e-mail address and "1–800" phone number, none of which have been factually linked to Connecticut on this record, fall short of the repeated solicitation of business in Connecticut found sufficient in *Thomason* to confer personal jurisdiction under § 33–411(c)(2).

■ Additionally, plaintiff has not demonstrated that § 33–411(c)(4), subjecting foreign corporations to personal jurisdiction in Connecticut on a cause of action arising out of tortious conduct in Connecticut, confers personal jurisdiction over West Stock. Although plaintiff contends that patent infringement is a tort, *Carbice Corp. v. American Patents Development Corp.*, 283 U.S. 27, 33, 51 S.Ct. 334, 336, 75 L.Ed. 819 (1931), plaintiff has made no showing of any tortious conduct by West Stock in Connecticut. Plaintiff has made no factual demonstration that any Connecticut Internet user actively employed West Stock's Web address to access the Muse site, browse the photographs at the site and then purchase a photograph utilizing the allegedly infringing technology by downloading the photograph from the Muse Web site. Even accepting plaintiff's argument that West Stock's mere "offer to sell" photography images on the Internet— utilizing a patented system for reproducing information embodied in material objects at a point of sale location such as its Web site—to potential Connecticut consumers constitutes a tortious act in Connecticut, plaintiff makes no factual demonstration that West Stock's Internet "offers to sell" actually were made in Connecticut, as discussed above. Moreover, the allegedly infringing processes emanated from information stored in West Stock's Internet server located in Washington, from which any electronic offers to sell

using this allegedly infringing technology were generated. In view of the foregoing, the Court concludes that plaintiff has failed to demonstrate the existence of facts that, if credited, would show that West Stock engaged in any tortious conduct in this forum sufficient to satisfy § 33–411(c)(4).

Because the court concludes that the exercise of personal jurisdiction over West Stock is proscribed by Connecticut law, it does not reach the issue of whether the exercise of personal jurisdiction over defendant comports with principles of due process. *See Bensusan Restaurant Corp. v. King,* 126 F.3d 25 (2d Cir.1997). For the foregoing reasons, defendant West Stock's Motion to Dismiss [doc. 80] is granted.

IT IS SO ORDERED.