**ESAB GROUP, INC., Plaintiff,**

v.

**CENTRICUT, LLC, Defendant.**

**No. Civ.A. 4:98–1654–22.**

United States District Court,
D. South Carolina,
Florence Division.

Jan. 15, 1999.

Mark W Buyck, III, Willcox Buyck and Williams PA, Florence, SC, for plaintiff.

Manton McCutchen Grier, Columbia, SC, for defendant.

## ORDER

CURRIE, District Judge.

This is an action for patent infringement under 35 U.S.C. § 281. Plaintiff alleges that Defendant Centricut infringed a patent owned by Plaintiff relating to an improved electrode for use in connection with plasma arc torches. The court has subject matter

jurisdiction over this case pursuant to 28 U.S.C. § 1338. The matter is before the court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. Defendant also filed a Motion to Dismiss for Improper Venue and, in the alternative, a Motion to Transfer the action to the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1404(a).

The court has reviewed the complete record in this matter, including the pleadings, briefs, affidavits and exhibits submitted by both parties. In addition, the court has studied the applicable law. For the reasons given below, the court finds that it lacks personal jurisdiction over Defendant Centricut. Accordingly, Centricut's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

## I. Factual Background

The court finds the following jurisdictional facts likely to exist. Plaintiff, a Delaware corporation with its principal place of business in Florence, South Carolina, develops, manufactures and sells welding and cutting systems. Defendant, a New Hampshire Corporation with its principal place of business in West Lebanon, New Hampshire, is engaged in the business of manufacturing and selling replacement parts for welding and cutting machines, including parts for products manufactured by Plaintiff.

Plaintiff is the owner of United States Patent No. 5,023,425 ("the '425 patent"), which issued on June 11, 1991. This patent covers an improved electrode for use in connection with plasma arc torches. Plasma arc torches are commonly utilized for cutting, welding and surface treatment of metals. Such torches incorporate an electrode that supports an arc from the electrode to the workpiece and is often surrounded by a layer of oxidizing gas. Plaintiff manufactures a variety of plasma arc torches and electrodes. Electrodes employing Plaintiff's patented design provide an enhanced service life over the prior art by preventing the typical rapid oxidation of a particular copper component of the electrode.

Defendant sells, among other products, electrodes for use in plasma arc torches.

Plaintiff alleges that Defendant's electrodes designated as Centricut Part No. C10–963 and Centricut Part No. C10–966 infringe the '425 patent. These products are specifically designed to be compatible with certain ESAB torches. The C10–963 electrode was first sold in October 1997. The nationwide sales of this product totaled $21,496.10 in 1997 and $144,707.02 as of August 1998. Defendant claims that the C10–966 electrode has not yet been sold or offered for sale, though the court notes that this product is now listed in Centricut's on-line catalogue.

There has been only one sale of the allegedly infringing electrodes to a customer in South Carolina. In July 1998, Centricut sold ten of the C10–963 electrodes to Superior Machine Company, a company located in Florence, South Carolina. The sale arose from an unsolicited phone call by Superior to Centricut on July 14, 1998, in which Superior ordered the C10–963 electrodes for a total cost of $219.10. Superior had never before transacted any business with Centricut. Centricut shipped the order to Superior in South Carolina on the same day that the order was placed. No other contact between Centricut and Superior has occurred, although entries in Centricut's data system indicate an intention to pursue further potential sales opportunities with this company in the future. Notably, this transaction did not occur until more than a month after Plaintiff filed the Summons and Complaint with the court in this action. Moreover, two days after Superior placed the order, Plaintiff served Defendant with the Complaint.

Centricut conducts its business entirely through mail order whereby customers mail, phone or fax orders to Centricut in New Hampshire. Less than one percent of Centricut's customers are located in South Carolina. In 1997, Centricut grossed approximately $80,000 from the sale of its products in South Carolina. As of September, Centricut's sales in South Carolina totaled over $65,000 for 1998.

Centricut engages in various marketing and sales techniques to service existing customers and develop new accounts throughout the United States. Centricut uses account

managers, sales personnel, outside regional representatives and telemarketers to contact customers and potential customers for the purpose of establishing and maintaining customer relations. In furtherance of its sales efforts, Centricut maintains information in various databases relating to the types of torches owned by its existing or potential customers and uses this information to target certain customers when new products relating to a particular torch enter the market. The database is also used to record any contact with present and prospective customers. Entries from this database reveal numerous contacts between Centricut's sales force and its customers in South Carolina. In one instance, the record reveals that sales calls were placed by Centricut to a customer in South Carolina several times a month for over a year.

Additionally, Defendant maintains a web site on the Internet. The web page, accessible in all fifty states and internationally, provides information about Centricut and its products and allows parties visiting the site to request literature, obtain samples, or place actual orders for Centricut products on-line. The on-line catalogue includes listings for the allegedly infringing C10–963 and C10–966 electrodes. Free samples of its products may be acquired by simply filling out the request form provided on the web page. To place an order on-line, however, the customer must first call a toll free "800" number to set up an on-line ordering account. This process requires the customer to provide some basic information before obtaining the customer ID and password necessary to access the system. Once an account is established, the customer can place orders for all Centricut products directly from the web site using this customer ID and password. According to the affidavit of Centricut employee Barton S. MacDonald, only six customers have registered for on-line ordering from Centricut, none of whom are located in South Carolina. Moreover, Centricut has made only one sale over the Internet, and that sale did not involve a South Carolina resident. Mr. MacDonald further states that Centricut specifically devised its on-line ordering system in this manner as part of a corporate policy against doing business in South Carolina. The system allegedly permits Centricut to screen out South Carolina customers and thereby avoid selling or offering to sell the accused products in South Carolina.[1]

Apart from the above referenced sales, Centricut contends that it has no other contacts with South Carolina or its residents. According to the affidavits submitted by Centricut in support of its motion to dismiss, Centricut has never owned property, real or personal, in South Carolina; never held a meeting in South Carolina; never maintained a telephone listing or bank account in South Carolina; never registered to do business in South Carolina; and never paid South Carolina taxes. In addition, none of Centricut's sales representatives, employees, directors, shareholders or officers are located or reside in South Carolina. The only time Centricut employees have even traveled to South Carolina occurred in connection with a previous lawsuit between these same parties.[2]

After Plaintiff's attempt to secure Defendant's voluntary agreement to discontinue sales of the allegedly infringing products failed, Plaintiff filed this action against Centricut for infringement of the '425 patent on

---

1. Defendants allegation of a corporate policy against doing business in South Carolina, however, is contradicted by the record evidence. First, there is an actual sale to a South Carolina customer (although Defendant characterizes this as a mistake). In addition, an internal Centricut memo regarding the marketing of the allegedly infringing products encourages the sales representatives to "sell to your heart's content" and contains no admonition against sales in South Carolina. Moreover, there is no written evidence of the policy in the record.

2. Notably, the Fourth Circuit ruled in that action that Centricut's contacts with South Carolina were too attenuated and insubstantial to provide a sufficient basis for the district court to exercise either general or specific personal jurisdiction over Centricut. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 624 (4th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998) (hereinafter "ESAB I"). Nonetheless, the Fourth Circuit found that the district court had personal jurisdiction over Centricut pursuant to the RICO statute, 18 U.S.C. § 1965, and pendent personal jurisdiction for the state law claims. See ESAB I, 126 F.3d at 624–28.

June 8, 1998. Centricut subsequently filed a motion to dismiss for lack of personal jurisdiction, a motion to dismiss for improper venue and a motion to transfer, on August 25, 1998. Plaintiff filed a brief in opposition to the two motions to dismiss on October 28, 1998.

## II. Personal Jurisdiction

■ Defendant has moved to dismiss this action pursuant to FedR.Civ.P. 12(b)(2) for lack of personal jurisdiction. When a court's personal jurisdiction over a defendant is contested, the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction. *See Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989); *Sheppard v. Jacksonville Marine Supply, Inc.,* 877 F.Supp. 260, 264 (D.S.C.1995). Where, as here, the court addresses the jurisdictional question on the basis of the written materials submitted by the parties, plaintiff need only make a prima facie showing of a sufficient jurisdictional basis. In considering a challenge on such a record, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs,* 886 F.2d at 676.

■ Evaluating the propriety of asserting personal jurisdiction over a nonresident defendant is generally a two-step process. *See Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1358 (Fed.Cir. 1998); *ESAB I,* 126 F.3d at 622. First, the court must determine whether the forum state's long-arm statute provides a basis for exercising jurisdiction. Second, the court must consider whether assertion of personal jurisdiction comports with the constitutional requirements of due process. *See Red Wing Shoe,* 148 F.3d at 1358; *ESAB Group,* 126 F.3d at 622. In South Carolina, the long-arm statute has been interpreted to be coextensive with the constitutional limits of the Due Process Clause. *See Southern Plastics*

*Co. v. Southern Commerce Bank,* 310 S.C. 256, 423 S.E.2d 128, 130–31 (S.C.1992). Consequently, the two-step inquiry compresses into one: whether the due process requirements are met. *See Sonoco Prods. Co. v. Inteplast Corp.,* 867 F.Supp. 352, 354 (D.S.C. 1994).

■ The due process test for personal jurisdiction has two related components: the minimum contacts inquiry and the fairness inquiry.[3] *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Due process requires that a nonresident defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In broad terms, the assertion of personal jurisdiction satisfies due process if "the defendant purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), such that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. Each assertion of personal jurisdiction is tested on a case-by-case basis. *See Orangeburg Pecan Co. v. Farmers Inv. Co.,* 869 F.Supp. 351, 357 (D.S.C.1994).

■ Once a plaintiff makes the required showing that there have been sufficient minimum contacts with the forum state by the nonresident defendant, jurisdiction may still be defeated if its exercise would be unreasonable and contrary to concepts of fair play and substantial justice. *See Akro Corp. v. Luker,* 45 F.3d 1541 (Fed.Cir.), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995). The reasonableness inquiry is a multi-factor balancing test that weighs any burden on the defendant against various countervailing considerations, including plaintiff's interest in obtaining relief and

---

**3.** Because this court's subject matter jurisdiction arises under the patent laws, the Federal Circuit Court of Appeals has exclusive jurisdiction over any appeal in this action. Accordingly, Federal Circuit law, rather than Fourth Circuit law, controls the analysis of the federal due process requirement here. *See 3D Sys., Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1377 (Fed.Cir.1998); *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564–65 (Fed.Cir.), *cert. dismissed,* 512 U.S. 1273, 115 S.Ct. 18, 129 L.Ed.2d 917 (1994).

the forum state's interest in the controversy. *See World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559. However, defeat of an otherwise constitutional exercise of personal jurisdiction on the grounds of unreasonableness is "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan,* 21 F.3d at 1568.

Personal jurisdiction over an out of state defendant may be either specific or general. A court exercises specific jurisdiction when a cause of action arises out of or is related to defendant's activities within the forum state. *See* S.C.Code Ann. § 36–2–803; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). If, on the other hand, the suit is unrelated to the defendant's contacts with the forum state, the court exercises general jurisdiction. *See* S.C.Code Ann. § 36–2–802; *Helicopteros Nacionales,* 466 U.S. at 414, 104 S.Ct. 1868. Notably, the threshold level of minimum contacts necessary to confer general jurisdiction is significantly higher than that required for specific jurisdiction. *See Helicopteros Nacionales,* 466 U.S. at 414 nn. 8–9, 104 S.Ct. 1868. Accordingly, contacts that would not constitutionally justify an exercise of general jurisdiction might support an exercise of specific jurisdiction. *See Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In the instant action, Defendant argues that neither specific nor general jurisdiction exists over it. The court addresses each form of jurisdiction below.

### A. General Jurisdiction

Plaintiff maintains that Centricut's overall sales activity in South Carolina, coupled with Centricut's maintenance of a web page, which is easily accessed from computers everywhere, including South Carolina, is sufficient to justify the exercise of general in personam jurisdiction by this court. Centricut responds that it does not maintain contacts with and does not direct sufficient commerce into South Carolina. In support of this position, Centricut argues that in a recent case involving the same parties, the Fourth Circuit held that Centricut did not have the requisite minimum contacts to subject it to general jurisdiction in this state. *See ESAB I,* 126 F.3d at 624. Centricut asserts that there has been no material change in the underlying jurisdictional facts since that decision.

To establish general jurisdiction, Defendant must have "continuous and systematic general business contacts" with the forum state. These contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities." *International Shoe,* 326 U.S. at 318, 66 S.Ct. 154. Accordingly, a plaintiff must demonstrate that the defendant has significantly more than bare minimum contacts with the forum state.

Given these governing principles, the record does not support a holding that Centricut is subject to general jurisdiction in South Carolina. Although Centricut's annual sales to South Carolina customers totaled $80,000 in 1997 and $65,000 as of August 1998, all of these sales were conducted by mail order and were not serviced by Centricut in South Carolina. Like the court in *ESAB* I, this court finds these contacts insufficient to support the exercise of general jurisdiction. *See ESAB I,* 126 F.3d at 624 (finding Centricut's sale of goods to twenty-six mail order customers located in South Carolina did not constitute sufficiently continuous and systematic contacts with the forum to justify the exercise of personal jurisdiction); *see also Stairmaster Sports/Med. Prods., Inc. v. Pacific Fitness Corp.,* 78 F.3d 602, 1996 WL 39681, at *1 (Fed.Cir.1996) (holding that defendant's sales of non-infringing products to forum residents constituting only 3% of its total sales volume, without any other contacts, insufficient to support general jurisdiction).

In addition to the shipment of goods to South Carolina residents, Plaintiff points to Centricut's maintenance of a web page viewable throughout the United States, including South Carolina, as grounds for the exercise of personal jurisdiction. This issue

was not addressed by the Fourth Circuit in *ESAB I* and presents a relatively new and undeveloped area of the law in this district.

Courts examining how the Internet relates to personal jurisdiction have found that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997) (holding defendant purposefully availed itself of forum's jurisdiction where defendant operated Internet news service with 3,000 paying subscribers in the forum state); *see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir.1997) (quoting same). The *Zippo* decision outlined a sliding scale of Internet contacts for purposes of personal jurisdiction analysis. On one end of the spectrum are "passive" web sites in which the defendant has done nothing more than advertise its product on the Internet. In most cases dealing with this type of activity, courts have found that personal jurisdiction cannot be exercised. *See Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997). On the opposite end of the spectrum are "interactive" web sites in which individuals enter into contracts with defendants via the Internet and download, transmit or exchange files. In these cases, courts have found the exercise of personal jurisdiction proper. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996) (finding personal jurisdiction existed over defendant in Ohio where defendant entered into contract to distribute "shareware" software through plaintiff's Internet server located in Ohio and defendant repeatedly sent his software files to the server in Ohio via e-mail). In the middle, there are web sites that allow a party to exchange information with a host computer. In such instances, jurisdiction must be determined by examining "the level of interactivity and commercial nature of the exchange of information." *Zippo*, 952 F.Supp. at 1124; *see Cybersell*, 130 F.3d at 418 (quoting same).

In the instant case, the court finds that Centricut's web site falls somewhere in the middle ground of cases. Defendant's web site clearly serves as a form of advertisement. The site also contains a literature and sample request form. In addition, the web page provides an on-line ordering form. However, a transaction cannot be completed over the Internet until the customer first calls the toll free number to establish an account and obtain a customer ID and password. Thus, the interactivity of Centricut's web site is limited to those customers who set up an account in advance.

 This court finds, however, that merely categorizing a web site as interactive or passive is not conclusive of the jurisdictional issue. General in personam jurisdiction must be based on more than a defendant's mere presence on the Internet even if it is an "Interactive" presence. *See Cybersell*, 130 F.3d at 418; *see also 3D Sys.*, 160 F.3d at 1380 (holding that defendant had not directed any activity toward the residents of California even though it maintained a World–Wide–Web site viewable in California); *Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 115 (D.Conn.1998) (holding maintenance of web site with hypertext links and product information request forms did not constitute availment of opportunity to do business in forum for purposes of due process analysis in patent infringement case).[4] Rather, the critical

---

4. Although several district courts have found personal jurisdiction based solely on the maintenance of a web site accessible in the forum state, *see Superguide Corp. v. Kegan*, 987 F.Supp. 481, 486–87 (W.D.N.C.1997) (holding owner subject to personal jurisdiction in North Carolina based on owner's maintenance of Internet site offering commercial services even though there was no evidence that a single North Carolina resident had visited the site); *Inset Sys. Inc. v. Instruction Set*, 937 F.Supp. 161, 165 (D.Conn.1996) (holding that merely furnishing a toll free number on an Internet site constituted the purposeful doing of business in the state and provided a basis for personal jurisdiction because of the continuous presence of the web site), these cases are in the minority. The nature of the Internet is such that it is accessible anywhere a laptop or computer can be hooked up to a telephone or modem line. A finding of jurisdiction based on the fact that the web page is accessible in the forum means that there would be nationwide jurisdiction over anyone who posts a web page. Consequently, this court finds these decisions wholly unpersuasive. To hold otherwise would be to subject defendants "to jurisdiction on a worldwide basis

issue for the court to analyze is the nature and quality of commercial activity actually conducted by an entity over the Internet in the forum state. *See Cybersell,* 130 F.3d at 418; *Edberg,* 17 F.Supp.2d at 114–115; *Osteotech,* 6 F.Supp.2d at 356.

Here, the record reveals that Centricut has conducted no commercial activity over the Internet in South Carolina. There is no evidence showing that any South Carolina resident has visited Centricut's web page or purchased products based on the web site advertisement. Additionally, there is no allegation of fact demonstrating that Centricut has done anything to encourage people in South Carolina to visit the site or that this web site was directed at South Carolina more than any other place in the country. Only six customers have registered for Centricut's on-line ordering service, none of whom are South Carolina residents. Furthermore, this registration has resulted in only one order being placed over the Internet, and that sale did not involve a South Carolina resident. Rather, Plaintiff relies solely on the national and international nature of the Internet to demonstrate that Centricut's web site had the potential to reach and solicit South Carolina residents. As stated by the court in *E-Data Corp. v. Micropatent Corp.,* 989 F.Supp. 173 (D.Conn.1997), "[i]f such potentialities alone were sufficient to confer personal jurisdiction over a foreign defendant, any foreign corporation with the potential to reach or do business with [forum] customers by telephone, television or mail would be subject to suit in [the forum]." *Id.* at 177. While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South Carolina residents. *See Cybersell,* 130 F.3d at 419.

The cases cited by Plaintiff in support of exerting personal jurisdiction over Defendant are distinguishable on their facts. In each case, the court found "something more" than defendant's mere presence on the Internet

"to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Cybersell,* 130 F.3d at 418; *see Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir.1998) (quoting same). For example, in *Digital Equip. Corp. v. Altavista Tech., Inc.* 960 F.Supp. 456, 462 (D.Mass.1997), not only did the defendant maintain a web site advertising its products but it also made at least three sales to Massachusetts residents based on the operation of that site and it entered into a contract with the plaintiff, a Massachusetts resident, governing its commercial activity on the Internet and selecting Massachusetts as the applicable law. Likewise, in *Blumenthal v. Drudge,* 992 F.Supp. 44, 56 (D.D.C.1998), besides maintaining an interactive web site which specifically focused on District of Columbia gossip, defendant regularly distributed its electronic column to District residents, solicited and received contributions from District residents, and contacted District residents to gather information for the column. *See also Mieczkowski v. Masco Corp.,* 997 F.Supp. 782, 786–88 (E.D.Tex.1998) (holding personal jurisdiction existed based on the nature of the defendant's web site in addition to the large volume of business conducted in the forum state); *Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34, 44 (D.Mass.1997) (finding defendant purposefully availed itself of benefits of Massachusetts where it performed work for a Massachusetts company, which comprised 35–50% of its annual income, in addition to advertising its work for that company on its Internet site in an effort to attract more customers). No such additional substantial contacts are alleged in the case at hand. Accordingly, this court finds that Centricut's web page does not constitute a substantial contact with South Carolina for purposes of general jurisdiction.

## B. Specific Jurisdiction

Specific jurisdiction requires that the out of state defendant engage in some activity purposely aimed toward the forum state and that the cause of action arise di-

---

and would eviscerate personal jurisdiction requirements as they currently exist." *Edberg,* 17 F.Supp.2d at 115; *see also Osteotech v. GenSci*

*Regeneration Sciences, Inc.,* 6 F.Supp.2d 349, 356 (D.N.J.1998).

rectly from that activity. In some instances, even a single contact by a nonresident defendant may, if sufficiently purposeful in its aim, support a constitutional exercise of specific jurisdiction with respect to a claim arising from that contact. *See Red Wing Shoe,* 148 F.3d at 1359. However, unsolicited contacts, random or fortuitous acts, or the unilateral acts of others (including the plaintiff) do not constitute such a purposeful connection between the defendant and the forum state.

In the instant action, Plaintiff asserts that two categories of contacts with the forum by Defendant support the exercise of specific jurisdiction. First, Plaintiff alleges that Defendant has sold one of the accused products to a South Carolina resident. Thus, Plaintiff's patent infringement suit arises from Defendant's activities in South Carolina. Second, Plaintiff contends that Defendant's maintenance of a web page listing the allegedly infringing electrodes constitutes an offer to sell in South Carolina.

### 1. Sale of the Infringing Product to Superior Machine Company

■ Plaintiff alleges that Defendant has placed in the stream of commerce in South Carolina the precise product that Plaintiff asserts is infringing its '425 patent. Specifically, Defendant allegedly sold ten of the infringing electrodes to Superior Machine Company, a business located in Florence, South Carolina, on July 14, 1998. Plaintiff claims that this single direct sale constitutes actual infringement in South Carolina and suffices to establish personal jurisdiction over Defendant.

Defendant asserts that the requirements for specific jurisdiction have not been met by virtue of this single sale of the accused infringing product in the forum state. Defendant insinuates that this sale was orchestrated by Plaintiff in an attempt to establish jurisdiction over Defendant in South Carolina. In support of this argument, Defendant points to the fact that it did not solicit this sale but rather Superior, a company located in the same town as Plaintiff and which had never before purchased goods from Defendant, initiated the contact. Further, Defendant alleges that the transaction did not occur until after the Complaint was filed. Moreover, Plaintiff served Defendant two days after Superior ordered the goods. Based on these facts, Defendant suggests that the order was placed by Superior at the request of Plaintiff for the sole purpose of manufacturing jurisdiction in this district. Plaintiff has not contested these allegations in its brief.

■ Generally, when a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant. *See Beverly Hills, Fan,* 21 F.3d at 1570–71. Notwithstanding this general rule, the particular circumstances surrounding the transaction at issue here require further analysis. Several courts have found that a single transaction initiated by a plaintiff after the filing of a complaint is insufficient to establish jurisdiction. *See, e.g., Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690, 697 (D.Del.1998) (holding that court cannot base jurisdiction on the shipment of the allegedly infringing computer chips into Delaware in response to telephone order placed by counsel for plaintiff after the filing of plaintiff's complaint); *DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419, 424–25 (E.D.Va.1996) (finding in patent infringement action that defendant sold only one allegedly infringing item in the forum state to a paralegal from the law firm representing plaintiff in this case, who engaged in transaction solely to establish personal jurisdiction, and holding that "plaintiff to whom cause of action has accrued may not thereafter initiate a transaction for sole purpose of creating jurisdiction under transacting business requirement of Va. long arm statute"). Moreover, the courts have repeatedly held that jurisdiction may not be manufactured by the conduct of others. *See Chung v. NANA Dev. Corp.,* 783 F.2d 1124, 1127 (4th Cir.), *cert. denied,* 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986); *Edberg,* 17 F.Supp.2d at 112 (holding one sale by manufacturer of allegedly infringing product, totaling $246, to a single unsolicited buyer in forum state did not satisfy the minimum contacts requirement for the exercise of specific jurisdiction); *see also Red Wing Shoe Co. v. Hockerson–*

*Halberstadt, Inc.,* 148 F.3d 1355, 1359 (Fed. Cir.1998) (holding contacts resulting from the unilateral activity of others do not count in the minimum contacts calculation).

Here, the transaction purportedly supporting personal jurisdiction post-dated the accrual of the cause of action and appears to be manufactured by Plaintiff for the sole purpose of providing Plaintiff with a preferred forum for litigation. Centricut merely responded to Superior's inquiry by shipping the requested items. Under this evidence, it cannot be said that Centricut purposefully availed itself of the privilege of conducting activities in South Carolina. *See Intel,* 20 F.Supp.2d at 697; *DeSantis,* 949 F.Supp. at 424–25. Accordingly, the court finds that this one sale in South Carolina does not satisfy the minimum contacts requirements of the due process analysis.

### 2. Maintenance of Defendant's Web Site as an "Offer to Sell"

■ Finally, Plaintiff argues that Centricut's active maintenance of a web site, which includes the accused electrodes in Centricut's listing of available products, constitutes an "offer to sell" under 35 U.S.C. § 271(a) and thus satisfies the due process requirements for exercising specific jurisdiction.[5]

There is scant case law available interpreting what constitutes an "offer to sell" as it appears in the amended form of 35 U.S.C. § 271(a). Recently in *3D Systems,* the Federal Circuit addressed the issue for the first time. In that case, the Federal Circuit held that whether a party has made an "offer to sell" that would support a finding of patent infringement under § 271 is an issue governed by federal law, not state law, because patent infringement is a federal statutory creation which is not limited by state contract law. *See 3D Sys.,* 160 F.3d at 1378–79. Applying federal statutory construction principles, the court found price quotation letters

sent to forum residents by the defendant sufficient to support specific jurisdiction as "offers to sell" because they contained a description of the allegedly infringing merchandise and the price at which it could be purchased.

In *Intel Corporation v. Silicon Storage Tech. Inc.,* 20 F.Supp.2d 690 (D.Del.1998), the plaintiff in a patent infringement suit argued that the defendant's placement of advertisements in national magazines with Delaware subscribers constituted "offers to sell" the allegedly infringing products in Delaware. *See id.* at 696. The court noted that Intel had not alleged facts showing that the defendant's advertisements had reached any current Intel customer in Delaware. Therefore, the court concluded that defendant's advertisements were directed at a national audience and "without any more substantial act directed at Delaware, are not offers to sell allegedly infringing products in Delaware under 35 U.S.C. § 271(a)." *Id.; see also Lifting Techs., Inc. v. Dixon Indus., Inc.,* No. CV–96–68–M–CCL, 1996 WL 653391, at *5 (D.Mont. Aug. 27, 1996) (finding jurisdiction in Montana under the offer to sell provision where facts showed that magazine advertisements reached six of plaintiff's customers in Montana and defendant also sent a direct solicitation, including a price quote, to a Montana resident).

As previously discussed, there are no allegations that any South Carolina resident accessed Centricut's web page. Even assuming that the web site constitutes an offer to sell under the patent laws,[6] Plaintiff makes no factual demonstration that Centricut's Internet "offers to sell" actually were made in South Carolina, by virtue of a consumer visiting the site. Without some other substantial act, the web page is not an offer to sell allegedly infringing products in South Carolina under 35 U.S.C. § 271(a). *See Intel,* 20 F.Supp.2d at 696. Consequently, the court

---

5. In 1996, Congress amended the patent statutes to expand the range of activities constituting an actionable claim for infringement to include an offer to sell, as well as an actual sale of infringing goods. 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell or sells any patented invention ... infringes the patent"). Accordingly, specific jurisdiction may be appro-

priate in each state that a defendant has "offered to sell" or sold the allegedly infringing product pursuant to this statutory change.

6. Defendant argues that no pricing information appeared anywhere on Centricut's web page and therefore it cannot constitute an offer to sell.

concludes that the minimum contacts requirements of the Due Process Clause are not met by virtue of Defendant's maintenance of its web site on the Internet.

For the foregoing reasons, the court finds that Plaintiff has failed to establish the minimum contacts necessary to support either general or specific jurisdiction over Defendant in South Carolina. As such, Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.

### III. Improper Venue

██ Venue in a patent infringement case "includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed.Cir. 1990), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991). Because the court has found Defendant is not subject to personal jurisdiction in this district, venue is not proper here.

### IV. Motion to Transfer

In the alternative, Defendant moves to transfer the action to the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1404(a), as the most convenient forum, if the court finds venue proper in South Carolina. As a result of the above holdings, this court need not decide whether transfer is appropriate in this case.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

IT IS SO ORDERED.