Dan **MIECZKOWSKI** and Marie Mieczkowski, Individually and as Representatives of the Estate of Ryan Mieczkowski, Deceased and as Representatives of the Heirs at Law of Ryan Mieczkowski

v.

**MASCO CORPORATION, et al.**

No. 5:96CV286.

United States District Court,
E.D. Texas,
Texarkana Division.

March 18, 1998.

Christopher A. Payne, Craken & Harkey, L.L.P., Dallas, TX, Nicholas H. Patton, Patton, Tidwell, Sandefur, a Paddock, Texarkana, TX, for Plaintiffs.

Preston McGee and Thomas E. Gibson, Potter, Minton, Roberts, Davis, a Jones, P.C., Tyler, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

FOLSOM, District Judge.

This action arises out of the unfortunate death of Ryan Mieczkowski on March 3, 1996. In 1982 Rose Furniture Company, which is domiciled in the State of North Carolina, sold a bunk bed to a Mr. and Mrs. Cascio. The Cascios had originally seen the bed in a Washington, D.C. store and had it delivered to their Virginia home. In July of 1994, the Cascios sold the bed to the plaintiffs in this case, Dan and Marie Mieczkowski. This sale took place in the State of North Carolina. The following year the Mieczkowskis moved with their three year old son. Ryan to Texas. On the night of March 2, 1996, Ryan was allowed to sleep on the top bunk of the bed for the very first time. The next morning, Ryan was found dead from asphyxiation apparently caused when he tried to climb down from the top bunk and became hung between the bed railing. The Mieczkowskis subsequently filed this products liability lawsuit which includes the Rose Furniture Company as a defendant. Rose has moved pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss this suit for want of personal jurisdiction.

## I. APPLICABLE LAW OF PERSONAL JURISDICTION

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a *prima facie* case supported by sufficient facts to establish that jurisdiction is proper. *Wilson v. Belin*, 20 F.3d 644 (5th Cir.1994). When considering such a motion, the Court may consider affidavits, depositions, or any combination of recognized methods of discovery. *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir.1996).

To determine whether personal jurisdiction exists, the Court must apply a two-part inquiry. First, in a diversity action, the Court must decide whether a state's long arm statute permits the exercise of jurisdiction. *See Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990); FED.R.CIV.P. 4(e). Second, the Court must determine whether exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir.1993). Because the Texas long arm statute allows for the exercise of personal jurisdiction whenever it is consistent with constitutional due process,[1] the Court need only look to the dictates of the United States Constitution to decide the jurisdictional issue. *See Wilson*, 20 F.3d at 647

The Supreme Court has determined that in the context of personal jurisdiction due process requires that: (1) a defendant have "minimum contacts" with the forum state; and (2) exercising personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92, (1987)(citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, (1945)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Wilson*, 20 F.3d at 647; *Polythane Systems v. Marina Ventures Intern.*, 993 F.2d 1201 (5th Cir.1993).

## II. MINIMUM CONTACTS

 The "minimum contacts" aspect of this analysis may be subdivided "into contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction." *Wilson*, 20 F.3d at 647. Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984); *Wilson*, 20 F.3d at 647. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic" and considered substantial. *Hall*, 466 U.S. at 414 n. 9. 104 S.Ct. at 1872 n. 9 (1984); *Keeton v. Hustler Magazine*, Inc., 465 U.S. 770, 779 n. 11, 104 S.Ct. 1473, 1481 n. 11, 79 L.Ed.2d 790 (1984); *Wilson*, 20 F.3d at 647. Because the plaintiffs assert that both specific and general jurisdiction are present in this case, the Court will address each of these issues in turn.

### A. Specific Jurisdiction

 In products liability actions such as this, the Fifth Circuit follows the "stream of commerce" approach to determine whether specific jurisdiction is present. This approach was formulated in the landmark decision *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *World–Wide Volkswagen*, the Supreme Court held that when a defendant places products in the stream of commerce with knowledge that the products will be used in the forum state the minimum contacts requirement is satisfied. *World–Wide Volkswagen*, 444 U.S. at 298, 100 S.Ct. at 567. The Fifth Circuit has interpreted this case to hold that "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *See Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir.1993) (citations omitted).

---

**1.** *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990).

The plaintiffs seek to utilize the above outlined approach to establish specific jurisdiction in this case. However, the plaintiffs fail to establish a *prima facie* case on this particular issue, because they have not put forth any evidence that tends to show that it was foreseeable that the bed in question would make its way to Texas while in the stream of commerce. *See generally Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081 (5th Cir.1984)(defendant company's president testified that product could foreseeably make its way into specific state). Because the defendant has put forth such evidence on this issue via the Affidavit of Rose employee Larry King[2], the Court must conclude that this test has not been satisfied. *See Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995)(only uncontroverted facts as distinguished from conclusory allegations, must be accepted as true); *see also Bullion,* 895 F.2d at 217. Therefore, specific jurisdiction is not present in this case.

## B. General Jurisdiction

As stated above, general jurisdiction will only be found where a defendant's contacts with the forum state are "continuous and systematic." In general, this requires a greater amount of contact with the forum state than would be required to sustain a finding of specific jurisdiction. *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987).

The seminal case dealing with the concept of general jurisdiction is *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In *Perkins,* the Supreme Court held that a Philippine mining corporation that maintained its general business operations in Ohio during World War II had continuous and systematic contacts with Ohio. The president of the corporation maintained his office in Ohio. Company files were kept in the state. Corporate correspondence originated from Ohio. Finally, board meetings were held in Ohio.

In addition, the Supreme Court in *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra,* held that the defendant's contacts with Texas were insufficient to sustain general jurisdiction. This was so even in light of the fact that the defendant had purchased helicopters, negotiated contracts, and trained pilots in Texas.

The defendant maintains that this case clearly falls within the confines of the *Perkins* and *Hall* decisions. In support of its position, the defendant points to various facts which include that: (1) it has no offices in Texas; (2) it has no employees in Texas; (3) it has no registered agent in Texas; (4) it has no real or personal property including warehouses in Texas; (4) it is not licensed to do business in Texas; and (5) it does no local advertising in Texas.

In support of their position that general jurisdiction is present in this case, the plaintiffs point to a number of business contacts and statistics regarding the defendant's sales in Texas. The statistics include the fact that over the last six years the defendant has sold and shipped over 5.7 million dollars worth of products to Texas residents. In 1997, it appears that the defendant consummated over 250 business transactions with Texas residents which accounted for approximately $717,000.00 in sales. In addition, the president of Rose testified that over the last four years sales to Texans have account for 3.2% of the defendant's gross sales income. Also, the plaintiffs point to the fact that twice a year the defendant does a direct mailing to Texas residents that have bought products from it in the past. Next, the plaintiffs state that the defendant has bought .2% of its furniture over the last 3 years from Kessler Industries which is located in El Paso. Finally, the plaintiffs direct the Court's attention to the fact that the defendant maintains an Internet Web site that is accessible to approximately 2.2 million Texans.

Although most of the facts cited by both parties were considered in both *Perkins* and *Hall,* the presence of the Internet, its role in todays ever changing commercial world, and its affect on jurisdictional considerations deserves separate attention. Use of the Internet by a defendant as a basis for exercising personal jurisdiction is a question of first

---

**2.** *See* Defendant's Motion to Dismiss, Exhibit B *p. 2.*

impression for the Eastern District of Texas as well as the Fifth Circuit itself.

It is a basic truth that in todays commercial world a great deal of business activity is conducted solely by mail and wire communications. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528. Use of these modes of communication have obviated the need for physical presence in a state in order to conduct business or to maintain personal jurisdiction. *Id.* In short, personal jurisdiction has evolved and adapted to changes in technological advances.

Enter the "information super highway." The Internet is a global network utilized by over 30 million people, corporations, and organizations worldwide. *Panavision Intern., L.P. v. Toeppen,* 938 F.Supp. 616 (C.D.Cal. 1996). Businesses utilize the Internet to provide information and products to consumers and other entities. *Id.* Essentially, the Internet allows businesses to conduct their trade with the stroke of a few keys from their desktop computers without ever leaving the office or picking up the telephone.

This being a relatively new technology, its affect on the law is also in its infant stages. Very few jurisdictions have addressed the various legal issues presented by use of the Internet. Even fewer have examined how the Internet relates to the concept of personal jurisdiction. In fact, only two federal appellate courts and a handful of district courts have directly discussed the issue presently before the Court. However, one certainty has developed without fail in all of these decisions: There is the possibility that certain uses of the Internet can provide the type of "minimum contacts" sufficient to allow a court to exercise personal jurisdiction.

 After reviewing the cases relating to this issue, the Court agrees with the proposition that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119,-1124 (W.D.Pa.1997). Such a flexible approach comports with traditional principles regarding personal jurisdiction.

The *Zippo* decision discusses in depth three areas into which Internet use can be categorized. At one end of the spectrum are those case in which individuals enter into contracts with defendants by way of the Internet and download, transmit, or exchange files. In these cases, the exercise of personal jurisdiction will almost always be proper. *E.g. CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). On the other end of the spectrum are those cases in which the defendant has done nothing more than advertise on the Internet. Such Web sites have been called "passive" sites. In cases dealing with this type of activity, courts have found that personal jurisdiction cannot be exercised. *See Weber v. Jolly Hotels,* 977 F.Supp. 327 (D.N.J.1997); *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996), *affirmed,* 126 F.3d 25 (2nd Cir.1997); *but see Inset Systems, Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161 (D.Conn.1996). In the middle, one finds a Web site that allows a party to exchange information with a host computer (the person or company maintaining the web site). In these cases, whether jurisdiction can be exercised is determined by examining the "level of interactivity and commercial nature of the exchange of information ...." *Zippo,* 952 F.Supp. at 1124; *e.g. Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996).[3]

After viewing the Web site in question[4] and reviewing the testimony of Dwight Ball, the Rose employee in charge of maintaining its Web site, the Court concludes that this

---

**3.** It should be noted that the majority of courts that have addressed this issue have done so in the context of specific jurisdiction analysis. However, the Court sees no reason why the analysis should not be applied equally to cases involving a general jurisdiction analysis. *See Weber,* 977 F.Supp. at 333–334(applying analysis to claims that both specific and general jurisdiction existed); *see also EDIAS Software Intern. v. BA-* *SIS Intern. Ltd.,* 947 F.Supp. 413, 417 (D.Ariz.1996)(stating that strong basis for subjecting defendant to general jurisdiction existed, but issue not addressed further based on clear finding of specific jurisdiction.)

**4.** Rose Furniture's Web page can be found at www.rosefurniture.com.

site is best categorized in the middle ground of cases. Initially, it is clear that the Web site in question serves as an advertisement. All such sites do. They are designed to provide information regarding companies and their products to the same extent as mailings and magazine advertisements. However, a close review of the site reveals that it is much more than a traditional advertisement.[5]

The defendant's Web site lists various categories through which interested persons can browse. First, individuals can view various furniture selections from an extensive list of categories. Individual pieces of furniture can be viewed along with information regarding its construction and materials as well as price information. Such information is found under the heading "Shop Online." Also, an order form can be printed from the site which allows customers to fill in their purchases after reviewing the items shown on the "Shop Online" page. Second, the site offers customers an opportunity to check the status of their purchases. In other words, a customer can go to a certain screen and receive information about a particular order they may have already made. Information is also available regarding freight costs for various orders. Finally, customers can communicate directly with "on-line" sales representatives in the defendant's "Internet Sales Division" to facilitate purchasing via electronic mail ("e-mail").[6]

The plaintiffs maintain that the above features constitute interactivity sufficient to establish continuous and systematic contacts with the State of Texas, and rely on the *Inset Systems* decision cited above in support of this position. In *Inset Systems*, a Connecticut corporation sued a Massachusetts corporation for trademark infringement. The alleged infringement occurred as a result of the defendant's use of an Internet domain name. *Id.* 937 F.Supp. at 162. The Connecticut court exercised personal jurisdiction,

because the defendant's on-line advertising potentially reached 10,000 Connecticut residents. The court stated that "unlike television or radio advertising, the advertisement is available continuously to any Internet user." *Id.* at 165.

This result has been criticized, and it has been stated that the decision represents the "outer limits of the exercise of personal jurisdiction based on the Internet." *Zippo,* 952 F.Supp. 1119, 1125. Although the Court agrees with the Pennsylvania court's assessment of *Inset Systems,* it need not decide whether the reasoning employed by the Connecticut court should be adopted here. Rather, the Court finds that the decision in *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996), is more on point with the present facts.

In *Maritz* the defendant started a Web site to promote its upcoming Internet service. The service consisted of assigning users an electronic mailbox and sending them information regarding services and products that matched their previously identified interest. *Id.* 947 F.Supp. at 1330. Users were encouraged to add their addresses to a mailing list so they could receive updates on the service. The district court rejected the defendant's contention that this was a "passive site," and reasoned that the defendant was engaging in active solicitation of business and promotion to develop a mailing list of Internet users. Furthermore, the defendant indiscriminately responded to every inquiry. *Id.* at 1333–34. These facts were found sufficient to establish minimum contacts.

In the present case, it is clear that the Web site maintained by the defendant is designed to solicit business in a manner that exceeds traditional notions of advertising. In addition, the testimony of Dwight Ball indicates that the defendant indiscriminately responds to all inquiries into its products. In the Court's opinion, a comparison of the Web

---

5. The Fifth Circuit has recognized that mere advertisements in national publications alone do not suffice to establish continuous and systematic contacts with a forum state. *See Bearry,* 818 F.2d at 376.

6. The defendant states in its papers that a "transaction with Rose cannot be consummated on the

Web site." Defendant's Reply Brief, at p. 8. However, on the Web page, Rose states that apprehension about **on-line ordering** can be abated when "you add the convenience of on-line ordering with the security of dealing with a company you've known for 75 years-Rose Furniture." (emphasis added).

site in *Maritz* and the site maintained by Rose reveals that the level of interactivity is greater in this case.

The Court need not decide today whether standing alone the Web site maintained by the defendant is sufficient to satisfy a finding of general jurisdiction. Nor must it look only to the traditional business contacts that the defendant has with the State of Texas. Rather, it is the combination of the two that leads the Court to the conclusion that the defendant maintains substantial, continuous and systematic contacts with Texas sufficient to subject it to personal jurisdiction. *See Heroes Inc., v. Heroes Foundation*, 958 F.Supp. 1, 5 (D.D.C.1996)(utilizing Internet Web site and other contacts with forum to sustain a finding that court could exercise personal jurisdiction). Simply stated, the contacts the defendant maintains with the State of Texas are such that it should reasonably expect to be haled into court here. *See World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567.

## III. FAIR PLAY AND SUBSTANTIAL JUSTICE

■ Having decided that the defendant's presence in the State of Texas is of a nature sufficient to exercise general jurisdiction, the Court must next determine whether such an exercise is constitutionally fair. In making this determination, the Court must examine: (1) the burden on the defendant; (2) the interest in the forum state; (3) the plaintiffs' interest in obtaining relief; (4) the shared interest of the several states in furthering fundamental social policies; and (5) the judicial system's interest in efficient resolution of controversies. *See Asahi Metal*, 480 U.S. at 105, 107 S.Ct. at 1033; *Ruston Gas Turbines*, 9 F.3d at 421.

■ In this case, the plaintiffs have a strong interest in obtaining convenient and effective relief. The plaintiffs reside in Texas and their son unfortunately died here. This forum provides the plaintiffs, as well as all of the defendants, with the opportunity to come into one courtroom and resolve all legal and factual questions at issue. The burden on the defendant of further defending this suit is also minimal considering the fact that the case has been on file since August 30, 1996, and this issue was not formally pursued or briefed by the defendant until November 7, 1997. Surely the burden of a week to ten day trial is not greater than the burden already experienced by the defendant yet not objected to until recently. Along these same lines, to dismiss this matter at this stage in the litigation would not serve the judicial system's interest in efficient resolution of controversies. This case was previously set for trial in December. There is essentially nothing more to do in this matter but try the case. Furthermore, the Court cannot find that the state's shared interest in furthering fundamental social policies is hampered by maintaining personal jurisdiction over this defendant. Finally, Texas has a strong interest in protecting its citizens from allegedly defective and dangerous products. Therefore, the second aspect of the due process analysis is satisfied. The exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.

## IV. CONCLUSION

Based on the forgoing analysis, the Court finds that the plaintiff has sustained its burden of establishing a *prima facie* showing that personal jurisdiction may be exercised over the defendant Rose Furniture Company. The defendant's contacts with the State of Texas are continuous and systematic, and maintaining this action against Rose is constitutionally fair. Therefore, it is hereby

ORDERED, ADJUDGED, and DECREED that Defendant Rose Furniture Company's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.