J–L CHIEFTAIN, INC. and Jackson–Lloyd Insurance Agency,
Plaintiffs,

v.

WESTERN SKYWAYS,
INC., Defendant.

No. 2:02–CV–196(DF).

United States District Court,
E.D. Texas,
Marshall Division.

Sept. 14, 2004.

Charles H. Smith, David V. Denny, Smith & Moore, Dallas, TX, FTS Good Charles Homer Clark, Clark, Lea & Ainsworth, Tyler, TX, for Plaintiff.

James Michael Bean, Mikel Fred Blaylock, Maloney, Bean, Horn and Hull, Irving, TX, for Defendant.

### ORDER

FOLSOM, District Judge.

Before the Court is Third–Party Defendant, Aircraft Specialty Services' 12(b)(2) Motion to Dismiss for Lack of General Jurisdiction (Doc. No. 96) and Motion for Fees and Costs (Doc. No. 98). Having reviewed the motions, the response, and the applicable law, the Court finds Third–Party Defendant's Motions to Dismiss well taken. Accordingly, the Motions to Dismiss (Doc. No. 96) is **GRANTED**. Notwithstanding, the Motion for Fees and Costs (Doc. No. 98) is **DENIED**.

### I. BACKGROUND

This case arises from a dispute over repair, or remanufacturing work performed on the engine of a 1979 Piper Navajo Chieftain airplane. Plaintiffs, J–L Chieftain, Inc. and Jackson–Lloyd Insurance Agency (hereinafter "J–L Chieftain" or "Plaintiffs"), own the '79 Piper Navajo. J–L Chieftain delivered the engines of their '79 Piper Navajo to Defendant, Third–Party Plaintiff, Western Skyways, Inc.'s (hereinafter "Western" or "Defendant"), facilities in Montrose, Colorado for the engines to be remanufactured. While in Colorado, under the care of Western, Western installed parts on J–L Chieftain's engines which were manufactured by Third–Party Defendant, Airplane Specialties Services, Inc. (hereinafter "ASSI" or "Third–Party Defendant") of Tulsa, Oklahoma. These parts were certified by ASSI in accordance with Federal Aviation Regulations. Western asserts that J–L Chieftain's alleged damages were caused in whole or in part by ASSI and has joined ASSI to this suit claiming contribution and indemnification.

On May 13, 2003, ASSI filed a Motion to Dismiss Western's Complaint For Lack of Personal Jurisdiction (Doc. No. 46). On June 19, 2003, Western filed a Motion For Leave to Amend Its First Amended Third–Party Complaint (Doc. No. 53). Importantly, no response was filed to Third–Party Plaintiff's Motion for Leave to Amend. The local rules provide that if no response is made within fifteen (15) days of the filing of a motion, the Court may treat the substance of the motion as unopposed. For this reason, the Court granted Western's Motion for Leave To Amend on July 9, 2003 (Doc. No. 57). On July 16, 2003, the Court entered an Order holding, *inter alia*, that in light of the Court's previous Order granting Western's Motion to Amend its Third–Party Complaint, ASSI's Motion to Dismiss for Want of Personal Jurisdiction did not address the proper Complaint (Doc. No. 60). ASSI's Motion to Dismiss was denied without prejudice to refiling based on the Amend-

ed Third Party Complaint. On July 21, 2003, ASSI filed a Motion to Reconsider (Doc. No. 61). On September 11, 2003, oral argument was held on the Motion to Reconsider in Texarkana.

ASSI's Motion for Reconsideration was denied per this Court's order dated January 20, 2004 (Doc. No. 89). In this same order, the Court denied ASSI's motion to dismiss and motion for fees and costs subject to refiling. Third–Party Defendant promptly refiled. These motions are now pending before the Court and are addressed herein.

## II. ASSI'S MOTION TO DISMISS

### A. STANDARD

In a diversity case such as this one, a federal court may only exercise jurisdiction over a nonresident corporate defendant to the extent allowed under state law. *See Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 214 (5th Cir.2000). It has been held that the reach of the Texas long-arm statute is equivalent to that of the United States Constitution. *Id.* Thus, the question before the court is whether the exercise of personal jurisdiction over the defendant would offend the Due Process clause of the Fourteenth Amendment. *Id.; see also* Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997).

■ The Due Process clause allows a court "the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protection of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Alpine View Co. Ltd.,* 205 F.3d at 215 (citations omitted). The defendant's demeanor and connections with the forum state must demonstrate

that the defendant should reasonably anticipate being haled into court in the forum state. *See Holt Oil & Gas Corporation v. Harvey,* 801 F.2d 773, 777 (5th Cir.1986), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987). Thus, to exercise personal jurisdiction, the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice. *See Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

■■ The personal jurisdiction analysis is subdivided into an analysis of the minimum contacts that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction. *See Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994). Specific jurisdiction is appropriate where the corporation has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Even where specific jurisdiction is lacking, the court may exercise "general jurisdiction" based on a defendant's contacts with the forum unrelated to the controversy. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868. That is, general jurisdiction may be ascertained from actions and conduct completely separable from the matter before the court.

■ To exercise general jurisdiction, the court must determine whether "the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction." *Holt,* 801 F.2d at 777 (citations omitted). "General jurisdiction can be assessed by evaluating contacts of

591

the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecommunications Corporation,* 197 F.3d 694, 717 (5th Cir.1999), *cert. denied,* 531 U.S. 917, 121 S.Ct. 275, 148 L.Ed.2d 200 (2000). For general jurisdiction purposes, the court does not view each contact in isolation. *Id.* Rather, all contacts must "be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity." *Schlobohm v. Schapiro,* 784 S.W.2d 355, 359 (Tex.1990); *see also Access Telecom, Inc.,* 197 F.3d at 717 ("In determining whether nonresident defendant's contacts with the forum state are sufficient to establish general personal jurisdiction, contacts must be examined 'in *toto*' rather than examining each contact in isolation from the others."). Further, the court is not concerned with the quantity of the contacts, but rather with the nature and quality of those contacts. *Id.; see also American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002).

 Where, as here, the court resolves the issue without an evidentiary hearing, the party asserting jurisdiction need only present sufficient facts to establish a *prima facie* case in support of jurisdiction. *See Alpine View Co. Ltd.,* 205 F.3d at 215. Such party's uncontroverted allegations are to be accepted as true, and all conflicts between the facts contained in affidavits and other documentation are likewise to be resolved in the party's favor. *Id.*

According to the jurisdictional plea made in its First Amended Third–Party Complaint, Western claims that the court

should exercise general jurisdiction over defendant because ASSI has conducted business in Texas and has had other contacts with this state. Doc. No. 59 at 3–4. Nevertheless, in responding to ASSI's motion to dismiss, Western also asserts that this Court may exercise "special personal jurisdiction" as well. Doc. No. 95 at 3. Although, ambiguous language is used, the Court addresses Western's argument as one for specific jurisdiction and will proceed to examine this issue accordingly.[1]

## B. DISCUSSION

### 1. Specific Jurisdiction

 Western appears to rely on a contract between ASSI and a Texas resident corporation, Superior Airparts, Inc. in its claim for specific jurisdiction. This is a distribution contract between parties in which ASSI has agreed to subject itself to jurisdiction in both the state and federal courts of Texas. However, it does not relate to the distribution of engine parts in this matter, and thus, these assertions are insufficient to support an exercise of specific jurisdiction.

Merely contracting with a resident of the forum court's state is not sufficient to subject a nonresident to the forum's jurisdiction. *See Holt,* 801 F.2d at 778. The fact that ASSI contracted with a party having no relation to the present matter does not support a finding of specific jurisdiction. Conversely, the evidence in the present matter supports the Court's conclusion not to exercise specific jurisdiction. ASSI's involvement in this matter is proclaimed by the shipment of parts from Oklahoma to Colorado. It has no contacts with the State of Texas or Plaintiffs with

1. In Western Skyways' First Amended Third–Party Complaint, Western states: "Jurisdiction is proper in this Court because Western Skyways, Inc.'s claims against Third–Party Defendants are supplemental to and arise out of the same incident and subject matter as Plaintiffs' claims against Western Skyways Inc." Doc. No. 59 at 2. This statement goes to specific jurisdiction and the Court will analysis the facts with regard thereto.

respect to the repair of Plaintiffs' '79 Navajo Chieftain. Thus, the Court cannot conclude that specific jurisdiction is established. As such, the Court will proceed to take up the question of whether Western's assertions support the exercise of general jurisdiction.

### 2. General Jurisdiction

Western relies on the following contacts with the State of Texas to support its contention for general jurisdiction: (1) ASSI maintains an interactive website to sell its products and services and provide advertising and communication and said website is accessible to Texas and Texas residence with Internet access; (2) ASSI has for many years maintained business relations with Texas residence and Texas companies, including buying and selling products and services; (3) sales in the State of Texas amounting to as much as 7.14% of ASSI's total sales; and (4) ASSI has advertising directed at the State of Texas through mail and trade publication ads. Doc. No. 95 at 3–12.

### a. ASSI's Website

With regard to ASSI's website, Western relies on the interactivity of the website to support its contention for general jurisdiction. Specifically, Western points out "individuals visiting the ASSI website can view merchandise information from an extensive list of categories, place actual orders online in specified quantities, and further request that the items be shipped to a physical address inside Texas." Doc. No. 95 at 4. Western also asserts that ASSI's website is used for advertising in Texas "that closely mirrors what was, in an earlier era, typically accomplished via mailings and magazine advertisements." *Id.* at 5. The Court notes ASSI's argument regarding time at which its website should be considered regarding interactivity; however-

er, as correctly noted by Western, the relevant time is the time at which this cause of action was filed. *See Wilson v. Belin*, 20 F.3d 644, 650–51 (5th Cir.1994); *see also Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n. 1 (5th Cir.1990) (noting the relevant time for determining jurisdiction is the time the compliant is filed).

In *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir.1999), the Fifth Circuit adopted a method for analyzing when a website can give rise to the court's exercise of personal jurisdiction. *Id.* at 336 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997)). This analysis "categorized Internet use into a spectrum of three areas." *Id.* Adopting the court's analysis in *Zippo*, the Fifth Circuit broke these down as follows:

[1] At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet.... In this situation, personal jurisdiction is proper. [2] At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. [3] In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website.

*Id.* (internal citations and quotations omitted). In the present matter, Western asserts that ASSI's website, *i.e.*, Internet usage, falls into the middle of the spectrum

and urges this Court to exercise personal jurisdiction based on the level of interactivity and commercial nature of the information exchanged on said website. *See* Doc. No. 95 at 5.

Not surprisingly, Western relies heavily on *Mieczkowski v. Masco Corp.*, 997 F.Supp. 782 (E.D.Tex.1998), in which this Court exercised general personal jurisdiction over a defendant grounded, in substantial part, on Internet contacts with the forum state. *Mieczkowski* was a products liability action brought against a North Carolina furniture manufacturer by Texas plaintiffs. *Id.* at 785. There, furniture was purchased from a store in Washington, D.C. and delivered to a Virginia resident. *Id.* It was subsequently sold to the plaintiffs in North Carolina who then moved to Texas. *Id.* With regard to the Court's examination of general jurisdiction, the plaintiffs presented evidence that over the previous six years defendant sold and shipped $5.7 million in products to Texas residents; consummated 250 business transactions totaling $717,000 in the year prior to the filing of the lawsuit; and, received 3.2 percent of its gross sales income from Texas residents in the previous four years. *Id.* Relevant to the Court's inquiry here, the accessibility of defendant's website to Texas residents was a significant factor in finding personal jurisdiction.

In *Mieczkowski*, the defendant's website provided categories of furniture and allowed a visitor to the site to view individual furniture pieces. *Id.* at 787. A visitor to the site could print an order form to complete their purchase after reviewing their selections on-line. *Id.* In addition, customers could check the status of their order through the Internet website. *Id.* Finally, visitors to the site could communicate directly with defendant's on-line sales representatives via e-mail. *Id.* Relying on the spectrum analysis contained in *Zippo Mfg.*, 952 F.Supp. at 1124, the Court held the defendant's interactive website, combined with the extent of defendant's traditional business contacts "leads the Court to the conclusion that the defendant maintains substantial, continuous and systematic contacts with Texas sufficient to subject it to personal jurisdiction." *Mieczkowski*, 997 F.Supp. at 788. The Court specifically declined to rule on whether either the website or the traditional business contacts, standing alone, justified a finding of general jurisdiction. *Id.*

On the surface, the facts in *Mieczkowski* are very similar to those of the present case. As in *Mieczkowski*, ASSI maintains a website with a considerable degree of interactivity. However, the Court is not inclined to extend the holding in *Mieczkowski* to base a finding of personal jurisdiction on ASSI's website alone. As the Internet has increasingly becomes a vital aspect of doing business in today's economy, such has introduced new questions into the law of personal jurisdiction. Consistent with its caution against broad constructions of general jurisdiction, the Fourth Circuit has noted that while technological advances may alter the landscape of personal jurisdiction, "it nonetheless has remained clear that technology cannot eviscerate the constitutional limits on a state's power to exercise jurisdiction over a defendant." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir.2002). Likewise, the Fifth Circuit, in *Revell v. Lidov*, 317 F.3d 467 (5th Cir.2000), cautioned that the sliding scale approach adopted in *Mink* "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts re-

quired...." *Id.* at 471.[2]

■ Thus, for the purposes of conducting a general jurisdiction analysis, it is not enough to find that an interactive website has the potential to reach a significant percentage of the forum state's population. *See Origin Instruments Corp. v. Adaptive Computer Systems, Inc.,* 1999 WL 76794 at *4 (N.D.Tex. Feb. 3, 1999) Instead, for the contact to be continuous and systematic, there must be proof that the website is actually reaching a portion of the state's population. *See Loumar v. Smith,* 698 F.2d 759, 763 (1983) (stating "the amount of business obtained from [ ] advertisements" was relevant to the question of whether placing advertisements in national magazine alone was sufficient for exercise of personal jurisdiction). Based on the rational outlined above, this Court finds that the significance of a foreign entities website, when it falls in the middle of the *Zippo* spectrum for determining personal jurisdiction, depends not only on the level of interactivity of the website, but also on the degree to which the website actually reaches or interacts with the forum state. *See Coastal Video Communications, Corp. v. Staywell Corp.,* 59 F.Supp.2d 562, 570, n. 8 (E.D.Va.,1999) (commenting on this Courts' holding in *Mieczkowski,* the court noted "there must be an examination of the quantity and nature of the Internet-based contacts with the forum, a step that is not adequately reflected in the *Zippo Mfg.* analysis."). The latter of which more closely resembles the traditional contacts associated with general personal jurisdiction.

■ To this extent, it appears from the record that ASSI maintains traditional business contacts with Texas through its product sales to various Texas customers between 1998 and 2002. Moreover, sales to Texas customers over this period have ranged from 3.83% in 1998 to 7.14% in 2002 of ASSI's gross sales. These numbers are significantly greater that the 3.2% in *Mieczkowski.* Additionally, ASSI has solicited credit application from some 42 Texas residence and serves as a vendor and distributor of Superior Air Parts, Inc., a Texas corporation. While the Court notes that the majority of ASSI's business relations with Superior involve the shipment of product from Texas to Oklahoma, to some degree, ASSI performs work on parts and ships them to Texas. Moreover, although not controlling in the present matter, ASSI has agreed to subject itself to jurisdiction in Texas under its distribution contract with Superior. ASSI also uses traditional forms of advertising directed to Texas residents in the form of direct mailing and other publication.

Notwithstanding these more traditional contacts with Texas, Western provides no direct link between these contacts and ASSI's website. Western merely states "[o]rders can of course be placed online as well." Doc. No. 95 at 5. There is no direct evidence that any of ASSI's considerable business with the State of Texas was conducted directly or indirectly through the use of its website. Thus, the Court gives ASSI's website minimal consideration with regard to its general jurisdiction analysis despite the website's degree of interactivity.

### b. ASSI's Traditional Contacts

■ Western contends that from 1998 through 2003, ASSI was systematically and continuously doing business in Texas. Specifically, Western states that the fol-

---

**2.** The Court notes that both *ALS Scan* and *Revell* were decided after this Court's decisions in *Mieczkowski;* ergo, the Court is inclined to incorporate these teachings and expand on its previous decision.

lowing business activities of ASSI justify the exercise of general jurisdiction in this case: (1) ASSI sells products and services to Texas customers; (2) ASSI purchases products from Texas companies; (3) a significant amount of ASSI's total sales come from Texas, as much as 7.14% in one year; (4) ASSI has afforded itself the benefits of doing business in Texas; (5) ASSI has solicited 42 credit application from different Texas customers; (6) ASSI entered into a distribution agreement with Superior Air Parts, Inc. a Texas corporation in which it agreed to subject itself to jurisdiction in Texas; (7) ASSI makes use of direct mail advertising to Texas residents when it makes a new product or new type of repair or when customers send their parts in for repair; (8) ASSI actively solicits business from Texas with letters to Texas residents; and (9) ASSI has submitted advertisements in national and secondary aviation publications.

Of this laundry list of contacts, none show a continuous or systematic relationship with the State of Texas. It is Western's burden to present facts establishing a *prima facie* case of personal jurisdiction over ASSI. These contacts fail to do so. ASSI's contacts in Texas are not of the type sufficient for the Court to exercise general jurisdiction.

Moreover, Western makes many broad statements yet fails to produce facts in support thereof. For example, Western states that ASSI "has afforded itself the benefits and protections awarded to those that do business in Texas;" however, it never mentions exactly how. Doc. No. 95 at 7. ASSI is not given any affirmative authorization to do business in Texas; it does not maintain a registered agent in Texas; it does not have any officers, directors, employees, or agents located in Texas; it does not pay taxes to the State of Texas; and it does not own any proper-

ty or facilities in Texas. Although the Court does not examine each of ASSI's contacts with Texas in isolation, as the Court must examine the contacts in *toto*, *Holt*, 801 F.2d at 779, it is apparent that the contacts, though numerous, do not show a systematic and continuous relationship between ASSI and Texas.

Western relies primarily on total sales between ASSI and Texas residents and a distribution agreement between ASSI and a Texas corporation. Notwithstanding, these are not the sort of contacts which demonstrate continuous and systematic business activity. *See Helicopteros*, 466 U.S. at 418, 104 S.Ct. 1868 (holding that "mere purchases, *even if occurring at regular intervals*, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.") (emphasis added); *see also Burger King*, 471 U.S. at 478–79, 105 S.Ct. 2174 (holding that merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction). The fact that business in Texas has constituted as much as 7.14% of ASSI total sales in one year and ASSI occasionally may advertise in a way that reaches Texas residents is not sufficient. *See Helicopteros*, 466 U.S. at 418, 104 S.Ct. 1868 (holding that purchasing 80% of helicopter fleet and spending some $4 million on parts and repairs over a seven year period is not sufficient contact with Texas forum.); *see also Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375–76 (5th Cir.1987) (holding that although the foreign defendant sold products to seventeen independent Texas dealers and took part in national advertising which reached Texas, such was not sufficient to exercise general jurisdiction). Moreover, the stream of commerce approach does not support a finding of general jurisdiction. *Id.*

The Fifth Circuit has found sufficient contacts where: (1) the defendant attended college and was formerly employed in the forum; (2) the defendant owned real estate in the forum; (3) the defendant travelled frequently to the forum, both for recreational purposes and to visit his children; (4) the defendant conducted a great deal of business in the forum. *See Holt,* 801 F.2d at 779. On the basis of these extensive personal and business connections between the defendant and the forum state, the Court affirmed a finding of minimum contacts, although recognizing that each contact alone would not justify jurisdiction. *Id.* However, unlike the present case, the cause of action in *Holt* related to one of the defendant's general contacts with the forum. While this connection was held insufficient to support an exercise of specific jurisdiction, the Court found it particularly relevant to a finding of general jurisdiction. *Id.* Moreover, the defendant in *Holt* conducted substantial business activities *in* the forum, thereby invoking the benefits and protections of the forum's laws. *Id.*

Western cites *Curtis Publishing Co., v. Golino,* 383 F.2d 586 (5th Cir.1967), for the proposition that one percent of a defendant's total sales volume may constitute a sufficient amount of business for the purpose of finding personal jurisdiction. However, this case is clearly distinguishable. In *Curtis,* the Fifth Circuit, held that a nonresident corporate magazine publisher was amenable to service of process under Louisiana's long-arm statute in a libel action, where nearly one percent of allegedly libelous magazine's circulation was in Louisiana and publisher sold other magazines within the state. *Id.* at 591. Thus, as in *Holt,* the underlying cause of action in *Curtis* related to the defendant's contacts with the forum state. Here, the cause of action bear no relation to ASSI's contacts with the State of Texas.

The Court finds that Western's strongest argument for the exercise of general jurisdiction is ASSI's distribution agreement that it maintains with Superior Air Service. Through this agreement, ASSI has strong ties to a Texas corporation. However, as ASSI points out, this goes to a relationship with Texas rather than in Texas. *See Access Telecom., Inc. v. MCI Telecom. Corp.,* 197 F.3d 694, 717 (5th Cir.1999) (holding contacts insufficient to exercise general jurisdiction, the court stated "while [defendant's] other contacts may be continuous and systematic contacts which constitute doing business *with* Texas, [defendant] has virtually no contacts which constitute doing business *in* Texas.") (emphasis original). In fact, the majority of ASSI's work with Superior is done in Oklahoma via Superior's offices in Memphis, Tennessee. The Court notes that in the contract between ASSI and Superior, ASSI has specifically availed itself to jurisdiction in Texas regarding disputes therewith. Nevertheless, this does not demonstrate continuous contacts with Texas. This is an unrelated contract with one other Texas resident. If ASSI had numerous like agreements, the argument may be more persuasive. Moreover, to some extent, this agreement cuts against Western's argument in that ASSI and Superior did not anticipate Texas having jurisdiction over ASSI; therefore, the companies specifically provided for such by contractual agreement. This demonstrate that ASSI did not anticipate being haled into court in Texas.

In conclusion, Western has not made a *prima facie* showing that any contacts ASSI has with the State of Texas are more than sporadic, random, and fortuitous contacts of the continuous and systematic nature which should make ASSI anticipate being haled to jurisdiction in Texas courts. Accordingly, ASSI is not subject to gener-

al jurisdiction in this matter. Having found this Court lacks jurisdiction, the Court does not consider the due process inquiry limits on the court's power to exercise personal jurisdiction.

### III. ASSI'S MOTION FOR FEES AND COSTS

ASSI ask this Court to impose sanctions under Rule 11(b)(2) and (b)(3), Rule 16(f), or its inherent authority for making erroneous and unsupported jurisdictional claims and misrepresentations. Specifically, ASSI asserts that Western acted deceitfully and performed insufficient legal research prior to filing its original Third-Party Complaint. ASSI further asserts that Western misrepresented that a 26(f) conference had taken place. ASSI contends that these acts have caused it significant expenditures of money on discovery and legal fees that could have been avoided.

 Having reviewed the parties' arguments and pleadings on this issue, the Court is of the opinion that ASSI's motion for fees and costs should be denied. Western's jurisdictional argument was warranted by existing law, and at the time Western filed its complaint and amended complaint, the Court finds that the allegation made therein were reasonable and could have had evidentiary support through further investigation and discovery. Although this Court was in agreement with respect to some of the broad jurisdictional assertions lacking in evidence, the Court does not find such rises to the level of sanctionable conduct. This is especially true considering the Court's previous holding in *Mieczkowski*—to which Western did not have the benefit of the Court's further explanation herein. Further, this Court is not inclined to award sanctions to issues which are, and in this case were, more properly disposed of in a motion to dismiss. Likewise, this Court does not find support for an award of sanctions or fees with regard to any other conduct in this matter. Thus, ASSI's motion for fees and costs is denied.

### IV. CONCLUSION

It is therefore **ORDERED,** Third-Party Defendant's Motion's to Dismiss (Doc. No. 96) is hereby **GRANTED.** It is further

**ORDERED,** Third-Party Defendant's Motion for Fees and Costs (Doc. No. 98) is **DENIED.**